JAMES McKENZIE *v.* JOHN McKENZIE AND OTHERS.

[ IN CHANCERY. ]

*Jurisdiction in Equity. Mistake of Fact.*

The owners of certain premises executed a mortgage thereof to John to secure payment of certain notes, and the mortgage was duly recorded. John sold and delivered all but one of the notes to James. Certain of the owners afterwards executed a second mortgage to another party to secure payment of other notes. The second mortgage and the notes thereby secured were taken from the mortgagee and payee thereof by V. W. & Co., for value, but with notice of the prior mortgage. Afterwards, the note retained by John having been paid, and James having become entitled to the benefit of the first mortgage, James, John and one of the mortgagors, desiring to invest James with the ownership of the mortgage, but being ignorant of such matters, employed the town clerk to do whatever was necessary to that end, telling him it was desired to transfer to James all the rights of John under his mortgage, and that there was a second mortgage on the premises. The clerk thereupon drew new notes in lieu of those that James then held, of the same tenor and date, but payable to James, and a new mortgage of that date, also running to James, to secure their payment, and procured John, with the assent of James, to discharge the original mortgage of record. Those steps were all taken under the supervision and by the advice of the clerk, and the clerk told James that he had acquired by the new mortgage a first lien on the mortgaged premises as security for his debt, and both James and John so believed. On a bill by James against V. W. & Co., praying for the re-establishment of the priority of his lien and for foreclosure of his mortgages, it was *held*, that the mistake by which John with the assent of James was led to discharge the original mortgage was a mistake of fact, and that equity would give the desired relief.

APPEAL from the Court of Chancery. The bill made substantially the following case :

On March 25, 1869, Austin McKenzie, his wife Kate, and Patrick McKenzie executed a mortgage of certain premises in Shelburne, to John McKenzie, to secure payment of the sum of $1,900 expressed in certain promissory notes of that date, one for $800 and six others for smaller sums, signed by said Austin and Patrick, and payable to said John, or order. That mortgage was duly acknowledged on March 27, and recorded on April 1, 1869. Soon afterwards, John delivered to the orator the smaller notes, amounting to the sum of $1,100, in payment of a debt of that

amount.   Afterwards on February 8, 1871, Austin and his wife Kate executed a mortgage of the same premises to Michael Mc Kenzie, Jr., to secure payment of certain promissory notes of that date, signed by said Austin, and payable to said Michael, or bearer.   Certain of those notes, together with the mortgage to secure them, were afterwards assigned to Frederick M. Van Sicklen, Obadiah J. Walker, William W. Walker and Benjamin R. Seymour, partners under the name of Van Sicklen, Walker & Co. ; and the bill alleged on information and belief that one Thomas Hart claimed to hold some of them.   On or about October 14, 1875, the eight-hundred-dollar note having been paid and the orator having become entitled to the full benefit of the first-named mortgage, the orator and said John and Austin undertook by agreement to have writings so made as distinctly to express that the orator was the owner of said mortgage and the unpaid notes thereby secured, and to assign to the orator all the apparent right of said John therein, and to that end applied to Frederick M. Weed, then town clerk of Shelburne, to draw the proper papers.   Acting under the advice of Weed, said Austin and Kate then executed six new notes in lieu of the old ones, and like them, except that they were payable to the orator, and a mortgage of that date, of the same premises to secure the payment thereof.   That mortgage was then duly acknowledged and recorded, and the original mortgage discharged of record.   The bill alleged that the new notes and mortgage were intended to be executed and taken, not in payment of the former notes and mortgage, but only by way of further security therefor, and that it was wholly by mistake and through the want of skill on the part of Weed, that the papers were drawn and the original mortgage was discharged as they were ; and that the holders of notes under the second-named mortgage had not been led into any error or sustained any loss thereby, for that they had full notice.   The bill, to which all parties to said transactions were made parties defendant, prayed that the mortgage of October 14, 1875, be declared to be a charge superior to the second-named mortgage, and that the defendants be decreed to pay to the orator the sum due thereunder, or be foreclosed ; and for general relief.

The defendants who composed the firm of Van Sicklen, Walker & Co., answered, admitting the execution of writings, as in the bill alleged, and that they held notes as alleged to the amount of more than $2000, which they purchased in good faith and for full value in March, 1875 ; and alleging, on information and belief, that Hart's claim was false and fraudulent, that all of the notes secured by the first-named mortgage had been fully paid and cancelled, and that even if they were exchanged for new notes, as in the bill alleged, the effect thereof was, as against those defendants, to discharge the lien existing by virtue of that mortgage.

The answer was traversed and testimony taken. The testimony tended to show that the original notes were never indorsed, and that the mortgage was never assigned to the orator ; that the business of taking the new notes and mortgage, &c., was all transacted under the supervision and by the advice of Weed ; that the McKenzies were ignorant of such matters, and that some of them could not read writing ; that they told Weed that John wished to transfer to the orator all his right under his mortgage, and that there was a second mortgage on the premises ; that Weed told the orator he had acquired by the new mortgage a first lien on the mortgaged premises as security for his debt, and that John and James so believed. Weed testified that the McKenzies came to his office, and requested him to make out certain papers to transfer the debt and mortgage to the orator, representing that that was the first mortgage on the property, and requesting him " to make the papers so as to put James in John's place as holder of the first mortgage on the property described in the mortgage," to secure the notes for $1,100. There was also testimony tending to show that the defendants examined the town records and saw the record of the original mortgage before taking the mortgage on which they relied.

The bill was taken as confessed as to all defendants except those who answered as above stated ; and, the cause having been heard on bill, answer, replication, and evidence, the court, PIERPOINT, Chancellor, at the April Term, 1879, adjudged that the mortgage of 1869, and the mortgage of October 14, 1875, were a valid charge on the premises described, superior to the claim of the de-

fendants Van Sicklen, &c., to the amount due on the notes speci-
fied in the last-mentioned mortgage, and ordered that the defend-
ants pay to the use of the orator such amount, with interest and
costs, or be foreclosed.

Appeal by the defendants Van Sicklen, &c.

*Daniel Roberts* and *Robert Roberts*, for the orator.

The transaction of October 14, 1875, stands upon the intent of
the parties thereto.  The intent was not to release the mortgage
or discharge any security for the debt.  Such having been the in-
tention, and the debt being unpaid, nothing that the parties did
could operate as a discharge or payment.  *Seymour* v. *Darrow*,
31 Vt. 122 ; *Dana* v. *Binney*, 7 Vt. 493 ; *McDonald* v. *McDon-
ald*, 16 Vt. 630 ; *Dunshee* v. *Parmelee*, 19 Vt. 172 ; *Parkhurst*
v. *Cummings*, 56 Me. 155 ; *Bourne* v. *Littlefield*, 29 Me. 302 ;
*Robinson* v. *Sampson*, 23 Me. 388.  Nothing but payment ope-
rates as a discharge.  2 Washb. Real Prop. 173 ; Jones Mortgages,
s. 971 ; 1 Hilliard Mortgages, 449 ; *Swan* v. *Yaple*, 35 Iowa,
248 ; *Moore* v. *Bond*, 75 N. C. 243 ; *Trenton Banking Co.* v.
*Woodruff*, 1 Green, Ch. 117.  " And if it be clearly shown that
the parties did not effect what they intended to do, a Court of
Chancery will perfect the intention."  *Beardsley* v. *Knight*, 10
Vt. 185.  The mistake was a mistake of fact, the parties suppos-
ing that the transaction was a transfer and not a discharge of the
mortgage.  But from mistakes that are mistakes rather of law
than of fact, parties are sometimes relieved ; *e. g.*, a mistake as to
the effect merely of written instruments.  POLAND, J., in *Proctor*
v. *Thrall*, 22 Vt. 267.  And see *Brown* v. *Sawyer*, 1 Aik. 130 ;
*Fletcher* v. *Bennett*, 36 Vt. 659 ; 2 Jones Mortgages, s. 970.

The answer alleges no fraud, but relies on a mere technicality.
But this is a question of equity, as well as a case in equity ; and
these defendants are bound by the arrangement made at the town
clerk's office, as well as the person under whom they claim, unless
they have thereby suffered loss.  But they have not.  The only
damage that can be suggested is, that in case of redemption by
them they might be subrogated to the rights of John or James as
against Patrick.  But to that there are many answers.

*E. R. Hard* and *J. W. Russell*, for the defendants.

The mistake on which the orator relies being not a mistake of fact but of law, if anything, the orator is not, as against these defendants, entitled to the relief sought. 2 Jones Mortgages, s. 969 ; *McDaniels* v. *Bank of Rutland*, 29 Vt. 230. In *Hunt* v. *Rousmaniere*, 1 Pet. 1, a case presenting an instance of the execution of a paper the contents of which were known to the parties, but which did not effectuate their intent, a case strikingly similar to this one in some of its circumstances, the court, per WASHINGTON, J., uses this language : " If, then, the agreement was not founded in a mistake of any material fact, and it was executed in strict conformity with itself, we think it would be unprecedented for a court of equity to decree another security to be given." Similar language is used by REDFIELD, J., in *Fletcher* v. *Jackson*, 23 Vt. 581. And see *Eaton* v. *Simonds*, 14 Pick. 98 ; *Broadwell* v. *Broadwell*, 6 Ill. 599.

But if the mistake were such as to entitle the orator to a restoration of the security of the old mortgage, he is not entitled to such relief. Under the doctrine of subrogation, a junior mortgagee stands, as to the mortgagor, in the position of a surety ; and on payment by him of a prior mortgage, he has an equitable right to the benefit of all the securities and means of enforcing repayment which the prior mortgagee had ; and if the latter voluntarily or negligently destroys, surrenders, or impairs any of such securities, his priority is lost. 1 Jones Mortgages, ss. 874, 876, 882, and cases *passim.*

The opinion of the court was delivered by

REDFIELD, J. The allegations in the bill are substantially admitted in the answer of Van Sicklen, Walker & Co., and the bill is taken as confessed as to all the other defendants. It is conceded that on the 25th of March, 1869, Patrick McKenzie, Austin McKenzie, and Kate, his wife, executed a mortgage to John McKenzie of the premises in question, to secure the sum of $1900. Austin afterwards paid $800, and the residue of the notes were sold to James, the orator, amounting at their date to $1100. Afterwards on the 8th day of February, 1871, Austin McKenzie

and Kate, his wife, executed another mortgage on the same premises, and Van Sicklen, Walker & Co. are the owners of a portion of the notes secured by said mortgage. On the 14th of October, 1875, the orator took six new notes, signed by said Austin and his wife Kate, of the same date and tenor as the notes he had purchased from John, but made payable to the orator instead of the said John, and a mortgage on the same premises, signed by said Austin and wife, to secure said new notes; and the old mortgage was discharged by said John on the margin of the town records. F. M. Weed, then town clerk of Shelburne, drew up the papers, and the whole business seems to have been transacted under his supervision and advice. It seems the first notes were made payable to John McKenzie, or order, but were never indorsed by John, nor the mortgage assigned to the orator. Mr. Weed testifies that the orator and Austin McKenzie came to him, and requested that he draw some papers transferring the debt and mortgage to James; that they requested him " to make the papers so as to put James in John's place as holder of the first mortgage on the property described in the mortgage" to secure the $1100. We have no doubt, from the whole testimony, that the parties purposed and undertook to put "James in John's place", and to fully invest James with the ownership of the mortgage, such as John had at the time it was given; and employed Weed for that purpose, who, as the custodian of the town records, presumably had some knowledge of such business. But it seems he had not; and the parties were confessedly ignorant of the methods which regulate title to real estate; hence this botch of work and bundle of errors. The scrivener undertook to transfer the equitable estate of John (which was a mortgage security for a debt) to James. James was already the equitable owner of the debt and its security, but James wanted the debt and security fully transferred to him. But instead of a transfer, the scrivener in form made him discharge it. If this was a proceeding against Austin and John to enforce this mortgage security, it being confessed that the debt was never paid nor its security intentionally impaired, to deny the power of a court of equity to dispense obvious equity to the parties, would seem to us to so shorten the arm of equity in its

most appropriate jurisdiction—reaching the consciences of the sinister, and repairing the blunders of the ignorant—that instead of being a most wholesome remedial agent, it would become a most cumbersome nuisance. The defendants Van Sicklen, Walker & Co., had a mortgage security upon Austin's equity of redemption in these premises, and nothing more ; they had full knowledge of the orator's prior equity, and their condition has in no respect changed. So if the orator's security is to continue and subsist until his debt is paid, the subsequent incumbrancer suffers no wrong, but remains in the full enjoyment of all his rights. They ask merely that they may profit by the orator's mistake. There is no reason why Van Sicklen, Walker & Co. should be regarded in different light from that of Austin. He owned the equity of redemption, and they had a mortgage upon it. Both should have their rights preserved ; but neither allowed, in this court, to speculate in another's blunders. Courts of equity are often invoked to correct written contracts—to engraft upon them new stipulations, or restrain the operation of such as are inserted, so that they manifest and carry out the intention of the parties. And this is the special province and most useful jurisdiction of that court. In *Proctor* v. *Thrall*, 22 Vt. 267, the court, POLAND, J., say : " It is undoubtedly true that Courts of Chancery do often interfere for the purpose of correcting agreements and contracts of almost every description, where the legal effect of the contract is entirely different from what the parties intended at the time it was made ; and this, too, in cases where the mistake of the parties was relative to the effect merely ; and so might be said to be rather a mistake as to the law than as to the fact." In *Mower* v. *Hutchinson*, 9 Vt. 242, the parties, being joint owners, executed quit-claim deeds, to work, as they supposed, partition of the premises ; but Mower's deed cut off his right to flow a portion of the premises, which was not intended. The court restrained the operation of the deed within the limits intended. The discharge by John, with the assent of James thereto, was under an entire misapprehension of *fact* as to the orator's condition at the time. He was told by the scrivener that he had acquired by the new mortgage a first lien upon the premises, as security for his debt, which was not true ; and under.

that delusion the orator acquiesced in the release of the old security, which he supposed had been supplanted by the new. Both parties to that transaction were mistaken as to that *fact*. And we think it would be unconscionable for Austin or John or any one holding under Austin's title, to set up that discharge on the record as an extinguishment of the orator's equity. There are abundant authorities to warrant the relief in equity called for in this case. And we do not think it would be profitable to attempt to define the line dividing mistakes in matters of fact and pure matters of law, where a court of equity will not interfere to correct a mistake.

*Decree affirmed, and cause remanded.*