## Hiram H. Piper

v.

## William N. Headlee et al.

*Mortgages — Foreclosure—Misdescription—Vendor's Lien—Agency— Jurisdiction—Freehold—Evidence.*

1. The rule that the payee or indorsee of negotiable paper takes it free from conflicting equities between the makers or obligees of which he had no notice, applies to equities between principal and surety, as well as other equities, and if the payee has no notice of suretyship, there is no equitable

obligation to protect the surety resting on him; he is justified in treating them both as principals.

2. The entering satisfaction of a mortgage and taking a new one, when designed by the parties to be a continuation of, the first mortgage, is not a satisfaction but a continuation thereof, and as to an intervening judgment creditor of the mortgagor does not give him priority.

3. Upon a bill filed to foreclose a mortgage this court holds, in view of the evidence, certain property in question having been misdescribed, a new mortgage being given and the rights of minors involved, that the decree of the trial court can not stand, and remands the cause with directions as to the decree which should be entered herein.

4. In the case presented, this court hold that the motion of appellees to dismiss the appeal upon the ground that a freehold is involved can not be sustained, the question being as to the existence and priority of mortgage liens.


[Opinion filed December 8, 1890.]

APPEAL from the Circuit Court of Bureau County; the Hon. GEORGE W. STIPP, Judge, presiding.


Messrs. KENDALL & LOVEJOY, for appellant.

This court has jurisdiction. We appealed only from that part of the decree relating to the priority and enforcement of liens. Walker v. Prichard, 121 Ill. 227; Malaer v. Hudgens, opinion of Baker, Judge, 122 N. E. Rep. 586; Land Co. v. Peck, 112 Ill. 432.

When Mrs. Headlee joined her husband in executing the mortgage dated September 15, 1885, she knew that her husband's interest in the Inks 80 had been mortgaged to Piper to secure the $3,000 borrowed of him to pay for such interest. Piper's equity to have such interest applied in satisfaction of said $3,000 was prior in time to her equity, if any she had, to have such interest applied in satisfaction of the mortgage of 1885. Taking the new notes and mortgage in 1886, for the same $3,000, did not subordinate his equity to that of her children, as the new mortgage was given and taken on the same land intended to be conveyed by the old mortgage, and for the purpose of correcting the misdescription in the old mortgage. Curtis v. Root, 20 Ill. 57; Campbell v. Trotter,

100 Ill. 281; Jansen v. Grimshaw, 125 Ill. 476; Donlin v. Bradley, 119 Ill. 423.

Admitting that, by Mrs. Headlee executing the notes and mortgage dated October 11, 1882, to secure the $3,000 borrowed of Piper, the twenty fifty-second parts of the Inks 80 occupied the position of surety for the payment of such $3,000; yet, Piper being ignorant of the fact that she had paid any part of the purchase money therefor, the taking of the new notes for the same debt, and a new mortgage on the land intended to be conveyed by the first mortgage, did not release such twenty fifty-second parts from the payment of such $3,000. Only in a court of equity could defendants in cross-bill enforce any claim to the Inks 80, and if they ask equity, they should be required to do equity. The legal title is in Piper. Neimcewicz v. Ghan, 3 Paige Ch. 651; Same case on appeal, 11 Wend. 323.

Mr. Joe A. Davis, for infant appellees.

Appellant should have taken an appeal to the Supreme Court. A freehold is involved within the meaning of the statute. Sec. 89, Chap. 110, R. S.; Monroe v. Van Meter, 100 Ill. 347; Sanford v. Kane, 127 Ill. 591.

A freehold can be involved in a case made by a cross as well as by an original bill. C., B. & Q. R. R. Co. v. Watson, 105 Ill. 217.

Appellant had notice of the equitable rights of Grace A. Headlee in the land in controversy. Jacob Miller, who acted as one of the agents of Piper in making the $3,000 loan on October 11, 1882, knew that Grace A. Headlee contributed $2,000 toward the purchase price of the land, and knew that the deed from Inks and wife, of date October 11, 1882, was made to Wm. N. and Grace A. Headlee.

Notice to an agent is notice to the principal. Williams v. Brown, 14 Ill. 200; Whitney v. Burr, 115 Ill. 289; Boyd v. Yerkes, 25 Ill. App. 528.

The possession of Grace A. Headlee until her death, and the possession of the infant appellees afterward, was sufficient to charge appellant with notice of their equitable interest in

the land.   Williams v. Brown, 14 Ill. 200;  Coari v. Olsen, 91
Ill. 273;  Whittaker v. Miller, 83 Ill.  381;  Ford v. Marcall,
107 Ill. 136;  First National Bank v. Kurtz, 22 Ill. App.  213.

Grace A. Headlee joined with her husband in the execution
of the mortgage of date October 11, 1882, and also the one of
date September 15, 1885.   Piper had knowledge of this fact.
This was sufficient to charge appellant with notice of all the
rights,  legal  or  equitable,  of Grace A. Headlee in the land.
Bradshaw v. Atkins, 110 Ill. 323.

By executing the release Exhibit "R," and surrendering up
the notes secured by the mortgage of date  October 11, 1882,
Piper released said land in controversy  from the lien of said
mortgage.   Seymore v. Mackey, 126 Ill. 341;  Battenhausen
v. Bullock, 8 Ill. App. 319;  Mattix v. Weand, 19 Ind. 151.

The burden of proof is on the person who would impeach
the cancellation of a mortgage to show that it was released by
fraud or some mistake of fact.   Jones on Mortgages (2d Ed.),
Vol. 2, Sec. 966;  Battenhausen v. Bullock, 8 Ill. App. 319.

The discharge of a mortgage and the surrendering up of
the notes secured thereby and the taking of new notes and a
new mortgage will let in intervening  liens, so that they will
have priority over the new mortgage.   U. S. v. Crookshank,
1 Edw. (N. Y.) 233;  Dingman v. Randall, 13 Cal. 512; Las-
salle v.  Barnett, 1 Black (Ind.), 150;   Jones on  Mortgages,
Vol. 2 (2d Ed.), Sec. 927.

To entitle one to relieve on the ground of mistake, it must
be a mistake of fact and not of law.   Jones on Mortgages
(2d Ed.), Vol. 2, Sec. 969;  Goltra v. Sanasack, 53 Ill. 456.

If the principal debtor acquires the mortgage, this will
discharge the surety.   Jones on Mortgages (2d Ed.), Vol. 1,
Sec. 114;  Fitch v. Cotheal, 2 Sandf. (N. Y.) Ch. 29.

A wife who has mortgaged her estate for her husband's
debt is in the position of a surety.   Jones on Mortgages (2d
Ed.), Sec. 114 and 942;  White and  Tudor's Leading Cases in
Equity (from 6th Ed.), Part 2, Vol. 2, star page 1152;  Bank
of Albion v. Burns, 1 Sickles (N. Y), 170.

If a mortgage is made to secure the debt of a husband,
the creditor is affected with notice of the wife as surety, and

he is bound thereby. Jones on Mtg. (2d Ed.), Vol. 1, Sec. 114 and 115; Bank of Albion v. Burns, 2 Lans. (N. Y.) 52; S. C., 46 N. Y. 170; Smith v. Townsend, 25 N. Y. 479; Loomer v. Wheelwright, 3 Sandf. (N. Y.) Ch. 135.

Any extension of time without consent of surety will release him. Jones on Mtg. (2d Ed.), Sec. 114 and 942; Dodgson v. Henderson, 113 Ill. 362; Myers v. First National Bank, 78 Ill. 258; Wait's Act. and Def., Vol. 5, 240; Gifford v. Allen, 3 Met. 255; Huffman v. Hurlbert, 13 Wend. 375.

A creditor having given a release for a debt can not reserve the right to proceed against the surety, whether the release is legal or equitable. White and Tudor's Leading Cases in Equity (from 6th Ed.), Part 2, Vol. 5, star page 1113 and 1134; Nicholson v. Revill, 4 Ad. & Ell. 675; Kearsey v. Cole, 16 Mees. & W. 136; Webb v. Hewitt, 3 K. & J. 438.

A surety has a right to stand upon the very terms of his contract; any alteration without his consent will extinguish his liability, even though it be for his benefit. It destroys the identity of the contract and it ceases to be the contract to which he became a party. Wait's Act. & Def., Vol. 5, 231 and 226; Dodgson v. Henderson, 113 Ill. 360; Miller v. Stewart, 9 Wheat. (U. S.) 680.

Presumptions and equities are never allowed to enlarge or in any degree to change their legal obligations. Wait's Act & Def., Vol. 5, 189; Stull v. Hance, 62 Ill. 52; Leggett v. Humphreys, 21 How. (U. S.) 66; Ludlow v. Simond, 2 C. C. E. (N. Y.) 1.

If a new surety is substituted in place of the old one, this is a discharge, even though the new one proves worthless. Wait's Act. & Def., Vol. 5, 233; Newman v. Hazelrigg, 1 Bush (Ky.), 412; Howe v. Buffalo R. R., 37 N. Y. 297; Wolf v. Fink, 1 Pa. St. 435.

If a note is paid by a new note, it can not be kept alive as collateral to the new one. Wait's Act. & Def., Vol. 5, 229; Barnett v. Reed, 51 Pa. St. 190; Andrews v. Marrett, 58 Me. 539.

Where a principal debtor has mortgaged his own property for his debt, his property must first be exhausted before the

creditor can have recourse to that of the surety.   Jones on
Mtg., Vol. 1, Sec. 114; Wilcox v. Tood, 64 Mo. 388; Loomer
v. Wheelwright, 3 Sandf. (N. Y.) Ch. 135; Wright v. Austin,
56 Barb. (N. Y.) 388; White & Tudor's Leading Cases in
Equity (from 6th Ed.) Part 2, Vol. 2, star page 1153.

Upon the same principle, where a wife joined with her hus-
band in mortgaging her estate, and the husband's property
was also mortgaged to secure the same, she will be entitled
to have her husband's estate sold first to pay the debt, not
only as against him, but also as against a second mortgagee of
her husband.   White & Tudor's Leading Cases in   Equity
(6th Ed.), Part 2, Vol. 2, star page 1153; Aguilar v. Aguilar,
5 Madd. 414.

LACEY, J.   The first question presented here is a motion by
appellees to dismiss the appeal because, as they allege, there is
a freehold involved.   Under the facts of this case we are unable
to see that there is any freehold involved, although we can
not feel perfectly sure that such is not the case, so variant
have been the decisions of the Supreme Court on the ques-
tion.   In C., B. & Q. R. R. v. Watson, 105 Ill. 217, it was
held that " a freehold is never involved unless the primary
object of the suit is the recovery of a freehold, and the judg-
ment or decree will, as between the parties, result in one party
gaining and the other losing his estate."   In the case of Sanford
et al. v. Kane, 127 Ill. 591, appealed from this court, that rule
was disapproved and the decree of this court in that case
reversed because, as the court held, there was a freehold
involved.   In the latter case the rule was laid down that a
freehold is involved " where the title to a freehold is so put
in issue by the pleadings that the decision of the case neces-
sarily involves a decision of such issue, although the judgment
or decree does not result in one party gaining and the other
losing the estate."

In Kerchoff v. Union Mutual Life Ins. Co., 128 Ill. 199,
where the complainant alleged the execution of a deed con-
veying certain real estate to the defendant, coupled with an
oral agreement that the complainant should be permitted to

redeem two of the lots conveyed upon certain prescribed terms and prayed that he be let in to redeem from such absolute deed on its face by paying the alleged stipulated sum, it was held that no freehold was involved. A similar holding was had in Lynch v. Jackson et al., 123 Ill. 360. Hollingsworth v. Koon et al., 113 Ill. 443; see same case, 13 Ill. App. 158. In Kerchoff v. U. M. L. Ins. Co., *supra*, the court say : "Unfortunately our rulings have not been entirely harmonious as to what is meant by 'involving a freehold,' as that term is used in the section above referred to; but without deeming it necessary to review the several cases, we think it may be said that where the question has been considered by the court and decided, the decision has in general (though there has been one exception and perhaps more) proceeded upon the understanding that the word freehold means as that word was known to and defined by the common law, and that it does not include the mere right to that which in equity will entitle a party to a 'freehold.'"

In the Sanford case, *supra*, it was said, "it is the rule that bills to foreclose mortgages, or establish other liens upon land, do not ordinarily involve freeholds, because the defendant may in such cases, by the payment of the money necessary to discharge the lien, prevent the decree from being so executed as to divest him of his freehold, and usually the only question litigated is the existence of the lien, the title itself not being put in issue. The same may be said of bills to redeem where the right to redeem is the only question litigated. But in such cases, when the pleadings raise adverse claims of title between the parties which must necessarily be adjudicated in order to a decree, a freehold is involved."

Now the case at bar is a bill to foreclose a mortgage and falls within the class of cases mentioned in the Sanford case, *supra*, quoted, where the respondents, in case the lien is established, may redeem by the payment of money necessary to discharge the lien and thus prevent the freehold from being divested.

There is no dispute but that the land originally deeded by Inks to William H. and Grace A. Headlee, his wife, was so

deeded by mistake, instead of the E. ½, S. E. 28; nor that the latter tract was intended; nor that Headlee and wife originally executed the mortgage dated October 11, 1882, on the land deeded by mistake, intending to mortgage the latter described land. The main issue in this case is as to whether the giving up of the original mortgage and notes, having Inks deed the title of the land to William H. Headlee after the death of his wife, Grace, and taking notes and a new mortgage from William H. on the land first intended to be conveyed and mortgaged, did not have the effect to release the interest which Mrs. Headlee had in the land from the equitable lien of the first mortgage, and also release her interest in the land from being first subject to a second mortgage executed by her and her husband, by a proper description, to appellant, from being a lien in the latter's favor superior to his lien on the husband's interest in the land described under the first mortgage, i. e., whether or not her interest in the land should be first sold to satisfy the second mortgage executed by her, before the husband's interest in the land should be sold and applied on the second mortgage.

We think, then, clearly no freehold is involved; it is only a question of the existence and priority of mortgage liens. See also Patrick S. Ryan v. Sanford, Supreme Court, filed May 14, 1890, Ottawa; Hanks v. Rhodes et al., filed May 14, 1889, 21 N. E. Rep. 774, where the court took jurisdiction to decide a deed absolute on its face, to be a mortgage.

We now come to the main questions in the case. First, did the appellant release the intended mortgage lien on the land sold by Inks to William H. Headlee and wife and intended to be mortgaged to appellant by the intended grantees? It is clear in our minds that appellant never intended to release his mortgage, either as to William H. Headlee's interest or Grace A. Headlee's interest. The evidence shows that it was his intention to perfect his lien on the entire title. He procured the deed to be corrected by having the entire interest in the land deeded to William N. Headlee and then taking a new mortgage on the entire title to secure the original debt. It is insisted that the

original mortgage was released of record and fully dis-
charged, and the mortgage given by Mrs. Headlee, so far as
her interest in the land in question was concerned, was thereby
discharged.     We do not so understand the transaction.
The land described in the mortgage in error was owned by
one Kasbeer, who desired to have the cloud removed from
the title.   It did not belong to the Headlees, and never had,
nor to Ink, and neither of them had any claim on it; neither
had appellant.   It was proper and right that appellant
should release the mortgage of record, for in reality it was
only an apparent mortgage.   He received no pay for it, nor
any part of his debt.   This action could not be regarded in
the light that he intended to release his equitable right to
have his mortgage corrected and to embrace the land intended.
The fact that appellant released Kasbeer's land had no im-
portance whatever, further than to show that an act of
justice was done to him.   If no new notes and mortgage
had been taken no claim could with any show of reason
be made that the release of Kasbeer's land could affect
his equities as against Mrs. Headlee's heirs and the land in
question.   The release claimed then may be laid out of the
question entirely.   It is insisted, though, by attorneys for
appellees, that inasmuch as the appellant took the new mort-
gage, and delivered up the old notes of Mrs. Headlee and
her husband, the heirs' equitable interest in the land was
released; that she was only security for her husband, and that
appellant must be held to legal notice of that fact because
his agents, to loan the money, had knowledge of the fact
that Mrs. Headlee had furnished her part of the money,
$2,000, and her husband furnished $200, and borrowed
$3,000 of appellant, and that she in fact was security for her
husband's part.   It is uncertain from the evidence just what
relation she bore to her husband in the matter.   She had an
intended deed for an undivided one-half.   Whether she was
intended to have that interest does not appear.   If it was
she could not have been security for her husband for all the
amount, for she should pay $600 more.   Next, the evidence
does not disclose that Miller & Piper, the loan brokers, who

procured the money from appellant, were in a legal sense their agents. The Headlees employed them to procure them the money on the market and agreed to and gave them the sum of $30 for their services.

In this employment whatever knowledge the agents had was obtained from the Headlees. Miller & Piper then applied to appellant for the loan and got it on their representations as to the security. If there was any agency it was a limited one. The evidence only discloses that Piper, of the firm of Miller & Piper, told his brother that Miller made out the papers and looked up the title; that he loaned the money for his brother to accommodate him; thought he could make a few dollars himself. He further testified that he did not know that "you could call that being his agent."

Now it may be inferred from this, that appellant trusted Miller to see that the title was all right and the papers properly made out, as a mere accommodation. It was really not necessary that appellant should know for his own security what relationship as to security existed between Headlee and wife. All appellant need know was that the land was good security and that the papers were all right. The fact of Mrs. Headlee furnishing $2,000 was learned by Miller & Piper as Headlee's agent, and we do not think that appellant should be held to knowledge, as the investigation of this fact was not within the scope of the agency of Miller & Piper, if any existed; all he wanted to know was that the title was right and the papers properly made. In Herrington v. McCormick, 73 Ill. 483, and McCormick v. Wheeler, 36 Ill. 116, it was held that where one party employed an attorney and he obtained certain information from his client as such attorney, and afterward was employed by another party as an attorney, the last party was not held to notice of the facts obtained from the first clients by virtue of his last employment. The rule may be based on the ground that communications between attorney and client are privileged; but as we think the appellant's employment, if any, did not call for the disclosure of such facts, and as the agent's duties were to his clients, the Headlees, good faith did not require such disclosures.

Piper v. Headlee.

Perry Piper, the brother of the appellant, after being employed by the Headlees, went to his brother and got the money from him, for the Headlees, he trusting his brother to pay it over and take the notes and mortgage, Miller being trusted to look up the title. This appears to be the extent of the agency of Perry Piper and Miller on appellant's part, and this appears to be what was meant by appellant when he says he loaned the money through Miller & Piper and that the latter got the money to invest for him. It appears clear, however, that appellant had no actual notice of Mrs. Headlee's position as security, if she was such, till long after the attempted correction of the mistake, and we think he could not be held to constructive notice except that the deed from Inks was intended to be made to the Headlees jointly. He therefore had good right to suppose that the note was given jointly as principals, especially as the land was deeded to them jointly or intended so to be. The law is that "the payee or indorsee of negotiable paper takes it free from conflicting equities between the makers or obligees, of which he had no notice." Booth v. Storrs, 73 Ill. 439; Neimcewicz v. Ghar, 3 Paige Ch. 651; same case on appeal, 11 Wend. 323.

This applies to equities between surety and principal as well as other equities, and if the payee has no notice of suretyship there is no equitable obligation to protect the surety resting on him; he is justified as treating them both as principals. Therefore we think that even if Mrs. Headlee was security as between herself and husband as to the $3,000 notes and mortgage, yet she was not released nor was her land released by the taking of new notes and the extension of time of payment, as to a portion of the notes, unless the new notes were taken in payment of the old ones, of which we think there is no proof. The circumstances of this case gave appellant a strong equity to have this mortgage satisfied out of the land intended to be conveyed and mortgaged as against Mrs. Headlee and her heirs, even though she had signed the notes as surety. As between Inks and her and her husband this $3,000 would have occupied the position of purchase money and forelosure enforced on equitable grounds, and it

would have made no difference that she had advanced a portion of the purchase money. The title would have been burdened with the full payment. Without the expected payment in full, the owner of the land would not have parted with the title and she could have enjoyed no part of the land; hence equity gives the grantor a lien on the land conveyed, called a vendor's lien, for the payment of the purchase money. The case of appellant is not much, if any, different in principle, as regards his equities, from what that of Inks would have been had he taken the $3,000 mortgage as did appellant. Instead of Inks giving the credit, appellant places himself in his position, advances the money for the title, has it conveyed, or intended to be, to Headlee and wife jointly, and then by intention takes a mortgage back to secure such purchase money so advanced, all being at the same time and one entire transaction. As far as the equities of the parties are concerned, we must treat this case as though there had been no misdescription in Inks' deed and in appellant's mortgage; for it is an equitable maxim that "that in equity is treated as done that should have been done." A case very nearly in point is Curtis v. Root, 20 Ill. 54. It is there said : "In point of right and principle it can make no difference whether the mortgage is given to the vendor of the purchase money or to another who actually advances the means to pay the purchase money to the vendor." The same doctrine is affirmed in Roane v. Baker et al., 120 Ill. 308.

By taking the new notes and mortgage, it was undoubtedly the intention of appellant to release the estate of Mrs. Headlee from any personal liability on the notes; but he was striving his best to hold the mortgage lien, and if a court of equity does not interfere as against William N. Headlee and appellant in favor of the heirs of Mrs. Headlee to recover the title to her share in the land, there can be no question but the new mortgage would be all that is necessary to secure the balance of the purchase money. When these heirs come in by their cross-bill and ask this relief, they should not be allowed to do an inequitable thing by taking Mrs. Headlee's share free from the lien of the purchase money. It appears that in

taking the new notes and mortgage the debt was not increased and only the time extended as to the payment of a portion of it. The entering satisfaction of a mortgage and taking a new one, when designed by the parties to be a continuation of the first mortgage, is not a satisfaction but a continuation of the first mortgage, and as to an intervening judgment creditor of the mortgagor, does not give him priority. Campbell v. Trotter, 100 Ill. 281.

It makes no difference whether appellant's relief is granted on the new or old mortgage, so .that the amount is not increased beyond what would have been due on the mortgage of 1882. Even if Mrs. Headlee's interest in the land had been released from the mortgage of 1882, the court below erred in holding that William N. Headlee's interest in the Inks eighty acres should be first sold in order to satisfy the $4,000 mortgage, given by Mr. and Mrs. Headlee as a second mortgage on this tract to secure the purchase money of another tract included in the same mortgage.

The appellant had a prior mortgage on the Inks eighty, and if William N. Headlee's interest be first sold to satisfy the second mortgage then he loses his security to that extent on his first mortgage. The appellant undoubtedly had a right to the satisfaction of his first mortgage first, out of the land therein pledged. It was first given and should be first satisfied. When Mrs. H. gave the second mortgage on the Inks eighty she knew of the first mortgage, and must have known that appellant had a prior lien, and she can not complain, nor her heirs, that the Inks land be sold to pay that first.

Even if her portion of the Inks eighty is released, that can not change her relation to the first and the second mortgages which she had signed. A great advantage would accrue to her by her land being released from the first mortgage, but why should this entitle her to another by changing appellant's first mortgage into a second one and making it subsequent to the second, and thereby compelling the selling of William N. Headlee's interest in the Inks eighty, first to apply on second mortgage, so as to release her interest in the Inks eighty to

that extent from the lien of the second mortgage? We can not see any justice in this.

From what we have said it will be seen that we hold that the interest of the heirs of Grace A. Headlee in the Inks eighty so called was not, nor was that of their mother in her lifetime, released from the mortgage of October 11, 1882, by the taking of a new mortgage by appellant from William N. Headlee alone, and the land therein named is liable to be sold to satisfy the notes named in the second mortgage given for the purchase money to correct mistake, not to exceed in amount the original notes and interest, William N. Headlee's interest being first sold and applied; that this mortgage is entitled to the priority of all others; that the twenty fifty-second interest of the heirs of Grace A. Headlee, if any remains after the satisfaction of the purchase money of the Inks eighty-acre tract, secured by the first and third mortgages, be applied in payment of the mortgage of 1885 for $4,000 and interest after the other land contained in the latter named mortgage is sold and applied to its satisfaction, and after all of William N. Headlee's interest is applied, if any remains after satisfying the mortgage of 1882.

The decree of the court below is therefore reversed and cause remanded with directions to the court below to enter a decree in accordance with this opinion.

*Reversed and remanded with directions.*