### THE INSTITUTE BUILDING AND LOAN ASSOCIATION

*v.*

### ADDIE T. EDWARDS et al.

[Submitted March 5th, 1913.  Determined March 26th, 1913.]

1. Where a mortgagee held a mortgage on real estate which was, admittedly, a lien prior to that of the two judgments held by the defendants, and subsequently took a new mortgage on the same land from the same mortgagor for the same debt, the judgments in question having in the meantime been entered against the mortgagor, such mortgagee is entitled to be restored to its original position, it appearing that no injury or prejudice had resulted to the judgment creditors from the cancellation,

and the mortgagee's negligence in failing to ascertain the existence of the intermediate judgments alone not being sufficient to deny such equitable relief.

2. The mortgagee's mistake in such case was not a mistake of law, but was a mistake of fact, in that it was not known that the judgments had intervened.

Final hearing on bill to be substituted to lien of canceled mortgage and to foreclose.

The present controversy is to determine whether the lien of complainant, as mortgagee of certain real estate, is superior to the lien of two certain judgments against the mortgagor. The controversy arises from the fact that complainant held a mortgage on the real estate in question which was, admittedly, a prior lien to that of the two judgments now held by defendants, and subsequently took a new mortgage on the same land from the same mortgagor for the same debt and canceled its former mortgage, without ascertaining that the judgments in question had in the meantime been entered against the mortgagor.

Complainant is a building and loan association. The original mortgage was made to complainant by one Addie T. Edwards, October 25th, 1906, to secure the payment of $2,500, and was conditioned for the payment of dues and interest until the stock accompanying the mortgage should mature and discharge the loan. In November, 1910, the mortgagor had fallen behind in her monthly payments, until it became apparent that it was impossible for her to keep up the required monthly payments, and also pay the dues and interest then overdue. Accordingly, it was arranged between her and the association that she should execute a new mortgage on the same property for the amount then found to be due from her by giving her credit for the payments she had made. It being found that she was thus entitled to a credit on the mortgage of $138.50, a new mortgage was made by her to the association October 25th, 1906, on the same property for $100 less than the amount of the old mortgage, and the excess of $38.51 was credited to her. The new mortgage was conditioned the same as the old. The new mortgage was then recorded and the old mortgage was canceled of record. The real purpose of thus sub-

stituting the new mortgage for the old one was to relieve the mortgagor from her arrearages and thus render it possible for her to meet her monthly payments. Complainant now seeks to be restored to the lien of its canceled mortgage as against the two judgment creditors.

The new mortgage was substituted for the older one without knowledge on the part of the association of the existence of the judgments.

*Mr. Louis N. Miller,* for the complainant.

*Mr. Henry O. Burt,* for the defendant Kates.

*Mr. Martin W. Lane,* for the defendant Wallace.

LEAMING, V. C.

I am unable to doubt the right of complainant to be restored to its original position, unless its negligence in failing to ascertain the existence of the intermediate judgment liens is to be regarded as sufficient to deny equitable relief of the nature here sought.

The transaction took the form of a new loan and a new mortgage security; but it was by all the parties intended and understood to be merely an extension of the old loan and security. Had knowledge of the judgments existed the old mortgage would not have been canceled. The inherent quality of the transaction, measured by the convention of the parties—the convention for a continuing lien being found in their mutual purpose—was to extend the time and manner of payment of the old mortgage in a manner to meet the bookkeeping requirements of the association and the convenience of the mortgagor.

There was no thought or purpose to impair the security already existing or to in any way release or waive the lien then enjoyed; it was clearly intended and understood that the continuity of the lien should be operative as its preservation. The mistake was not a mistake of law; it was a mistake of fact, in that it was not known that the judgments had intervened. A search for intervening liens was in fact made, but was inadequately made. The

plainest principles of equity suggest that the benefit of the lien of the canceled mortgage should be made available to complainant unless some additional circumstance is to be found in the transaction which may be deemed operative to deny to complainant the relief thus sought.

The equitable right of a mortgagee to be restored to the benefits of the lien of a mortgage which has been thus canceled of record simultaneously with the execution and recording of a new mortgage between the same parties on the same land to secure the same or a part of the same debt, as against the liens of intervening mortgages or judgments which have arisen after the first mortgage has been recorded and before it has been canceled of record, is not without support in adjudicated cases. In *Campbell* v. *Trotter, 100 Ill. 281,* this precise question is presented. Trotter held a mortgage against Wright securing the payment of several notes. Subsequently, some of the notes having been paid and others being overdue and accrued interest being unpaid, the parties determined to extend the loan by the execution of a new mortgage on the same land and new notes for the amount remaining unpaid, the new notes to be secured by the new mortgage. This was done and the new mortgage was recorded and the old mortgage was canceled of record and the old unpaid notes were surrendered. Intermediate the making and recording of the two mortgages, Wright, the mortgagor, executed a mortgage to one Campbell on the same land to secure a loan then made by Campbell to Wright. The bill was to reinstate the lien of the old canceled mortgage as against Campbell. The opinion of the court proceeds as follows: "Campbell took his mortgage with knowledge of Trotter's first mortgage of March 19th, 1869, and as a second mortgage subordinate to Trotter's, and it should be held subordinate to that mortgage. There has nothing occurred since which, in equity, should displace its priority. The taking the new mortgage of August 30th, 1877, and entering satisfaction of the first mortgage, was as designed by the parties, but in continuation of the lien of the first mortgage. The whole purpose was only an extension of the time of payment. The transaction was entirely irrespective of Campbell. No consideration moved from him. It was with no reference to his benefit, and should

not be made to redound thereto by the advancement of his mortgage to a priority over the lien of Trotter for the unpaid portion of the purchase-money for this land he sold to Wright. The entry of satisfaction of the first mortgage and surrender of the first notes was but a formality, as regarding any essential right of the parties; but it gives to Campbell's mortgage an inequitable advantage which it ought not to enjoy. It was through ignorance, in fact, of the existence of Campbell's mortgage that Trotter entered satisfaction of the first mortgage and surrendered the notes, and which he would not have done had he known of Campbell's mortgage. This Trotter testifies to, and the nature of the transaction itself would satisfy one that such must have been the case." *McKenzie* v. *McKenzie, 52 Vt. 271*, is to the same effect. In that case the clerk who prepared the new mortgage to take the place of the old one informed the mortgagee that it was operative to extend the lien of the old mortgage. The court held this to be a mistake of fact which could be relieved against, and denied to an intermediate mortgagee the privilege "to speculate in another's blunders." *Young* v. *Shaner, 73 Iowa 555*, is almost identical with the present case; there, as here, the intermediate lien was a judgment. The court held that "the new mortgage to the amount of the old may be regarded as a mere renewal, and the amount thereof a superior lien to the lien of the judgment." The same view is adopted in *Title Guarantee Co.* v. *Wrenn, 35 Oreg. 62.* In *Hutchinson* v. *Swartsweller, 31 N. J. Eq. (4 Stew.) 205*, Vice-Chancellor Van Fleet, in delivering an opinion for this court, said: "Where a first mortgagee accepts a new mortgage and surrenders a prior one for cancellation, in ignorance of the existence of an intervening lien, equity, in the absence of laches, or other disqualifying fact, will restore him to his original position."

It remains to be considered whether any special circumstances exists in the present case to deny to complainant the relief which it now seeks.

The equitable right of complainant to the reinstatement of the lien of the canceled mortgage to the end that complainant may enjoy the benefit of the lien of that mortgage as of its date to the extent of the amount secured by the new mortgage, is necessarily

based on the existence of a mistake on the part of parties and the power of a court of equity to relieve against the consequence of the mistake. The mistake which must afford the ground of relief in this case arises from the fact that the parties intended to merely extend the lien of the old mortgage for the lesser amount of the new mortgage and believed that the new mortgage accomplished that result. It is not claimed that this belief arose from ignorance of the board of directors of complainant or any member of that board or of the conveyancer who superintended the transaction that intervening judgments against the mortgagor, if any existed, would not be advanced in lien by such a transaction. The mistake was in the belief that no intervening judgments or other liens existed, and it is that mistake which must afford the basis of any relief that can be awarded by this court. The equitable relief sought is therefore dependent upon the existence of a mistake of fact, and the discretion of this court in awarding relief against the legal consequence of the mistake must be controlled by the accepted rules which surround the exercise of that branch of its jurisdiction, however just the relief which is sought may appear to be.

In this view it is urged in behalf of the judgment creditors that complainant must be denied relief because the mistake was the result of its own negligence in failing to cause searches for judgments to be made in the supreme court, in which court the judgments in question were entered. The principle which defendants seek to invoke is sometimes expressed in the phrase that a party will not be given relief against a mistake arising from his own negligence. *16 Cyc. 69; 1 Story Eq. Jur.* § *146.* This principle has undoubtedly been given general recognition and beneficial application in a great number and variety of cases. In this jurisdiction it was applied in *Deare* v. *Carr, 3 N. J. Eq. (2 Gr. Ch.) 513; Voorhis* v. *Murphy, 26 N. J. Eq. (11 C. E. Gr.) 434; Haggerty* v. *McCanna, 25 N. J. Eq. (10 C. E. Gr.) 48; Hayes* v. *Stiger, 29 N. J. Eq. (2 Stew.) 196; Parkhurst* v. *Cory, 11 N. J. Eq. (3 Stock.) 233; Campbell* v. *Gardner, 11 N. J. Eq. (3 Stock.) 423; Smith* v. *Duncan, 16 N. J. Eq. (1 C. E. Gr.) 240; Cook* v. *Bodine, 30 N. J. Eq. (3 Stew.) 470; Pennsylvania Railroad Co.* v. *Trimmer, 31 Atl. Rep. 310; Dillet* v. *Kimble, 25*

*N. J. Eq. (10 C. E. Gr.) 67.* But it is pointed out in *2 Pom. Eq. Jur. § 856* and notes, and in *Collingnon* v. *Collingnon, 52 N. J. Eq. (7 Dick.) 516,* that this principle is not to be accepted as of universal application, and that even a clearly established negligence may not of itself be a sufficient ground for refusing relief, if it appears that the other party has not been prejudiced thereby. In that view relief was granted in *Seeley* v. *Bacon, 34 Atl. Rep. 139.* In that case Vice-Chancellor Reed, in considering whether complainant's negligence in not procuring proper searches for encumbrances should be operative as a bar to the reinstatement of the lien of the canceled mortgage, said: "As a rule, equity will refuse to rectify a mistake which occurred through the unexcusable negligence of the party who asks to be relieved from the effect of the mistake. *Haggerty* v. *McCanna, 25 N. J. Eq. (10 C. E. Gr.) 48; Dillett* v. *Kemble, 25 N. J. Eq. (10 C. E. Gr.) 66; Voorhis* v. *Murphy, 26 N. J. Eq. (10 C. E. Gr.) 434.* But what degree of vigilance is to be exercised must depend upon the facts of each case. Where the act done by mistake is one calculated to induce others to take a line of conduct which will put them to loss if the mistake is corrected, it ought to be clear that the party asking for relief has been led into the mistake in spite of the employment of the highest degree of vigilance. Where, however, no one is injured by the mistake but the party himself, and no one has changed his position by reason of the act executed through the influence of the alleged mistake, I see no reason why the mistake should not be corrected, although the highest degree of vigilance has not been exercised. For instance, if the mortgage held by Mr. Bacon had been taken for money advanced by him at the time, and had been taken after the cancellation of the old mortgages, and before the record showed the existence of the new mortgage, a case would have been presented requiring the strongest evidence of unpreventable mistake to justify the reinstatement of these mortgages. But, as has already been observed, the facts in respect to the mortgage held by Mr. Bacon are entirely different. He advanced nothing at the time his mortgage was accepted, and the old mortgages were still a subsisting lien at that time. So it is perceived that the security of his mortgage, after the restoration of the two old mortgages, is exactly the

same as it was before the cancellation. No valuable consideration was advanced by Bacon at the time of the execution of the mortgage to him on the faith of the supposed non-existence of the two old mortgages, arising from their cancellation of record. By the decree asked for, the parties will be placed in *statu quo*. In this respect the case differs from that of *Frazee* v. *Inslee, 2 N. J. Eq.* (*1 Gr. Ch.*) *239*, where the inference is that Frazee took his mortgage for valuable consideration. It differs also in respect to the fact that in that case there was evidence that Campbell, the defendant, owner of the canceled mortgage, was informed of the existence of Frazee's mortgage before its cancellation. The case of *McKenzie* v. *McKenzie, 52 Vt. 271*, was in this respect exactly like this, and in other features quite similar." In *Seeley* v. *Bacon* some inquiries touching encumbrances had been made in the office where the subsequent mortgage was of record, but the extent and nature of the inquiries were in dispute. The conclusions above quoted clearly proceed upon the tentative assumption that no proper searches or inquiries touching encumbrances had been made by complainant. Essentially, the same situation is here presented as in *Seeley* v. *Bacon*. No injury or prejudice resulted to the judgment creditors, defendants herein, from the cancellation of the record of the mortgage in question; that mortgage was a valid first lien at the time the judgments were entered; the judgment creditors have done nothing because of or in reliance upon the cancellation of complainant's mortgage. The relief sought is the re-establishment of the former relation of the parties, which relation has not been intentionally abandoned by complainants. It is clear, therefore, that if the relief here sought be refused, it must be upon the abstract theory that relief cannot be granted to one who has been negligent, even though the negligence has been harmless and has been wholly inoperative to injure anyone. The application of that doctrine to the present case would be operative to visit a penalty on complainant for its harmless negligence to the amount of the judgments and to award the amount of that penalty to the judgment creditors who are clearly no more entitled to it than any stranger, except from the circumstance that they now occupy an artificial position in which they may avail themselves of it, for their judgments were entered by them as a lien on the equity of redemption of the mortgagor

only. Unless negligence, when considered by a court of equity as a bar to equitable relief, is to be measured in the ascertainment of its inherent quality and force by its effect upon the interests of others, there would seem to be in this branch of equity jurisprudence a radical departure from the rules which have heretofore controlled both courts of law and equity in the administration of remedial justice. Decrees for the reformation of contracts which contain mutual mistakes of the parties are usually if not uniformly based upon the right to relief against mistakes which have arisen through some form or degree of negligence of the complaining party. It is indeed difficult to conceive of any form of equitable relief from mistakes where some degree of negligence of the party seeking relief is not involved. Even the bar of laches is founded upon the idea that the adversary may by the delay have suffered in his ability to defend. *Lutjen* v. *Lutjen, 64 N. J. Eq.* (*19 Dick.*) *773.* The law courts permit a recovery in an action of *assumpsit* for money paid by reason of a mistake which involves negligence upon the part of the plaintiff. In *Kelly* v. *Solari, 9 Mees. & W. 54,* in an action for the recovery of money paid through a mistake of fact the court said: "If it is paid under the impression of the truth of a fact which is untrue, it may, generally speaking, be recovered back, however careless the party may have been in omitting to use due diligence to inquire into the fact. In such a case the receiver was not entitled to it, nor intended to have it." It is impossible to believe that a court of equity is restricted by a more stringent rule. And it may, I think, be appropriately added that the chief aim and purpose of our recording statutes is the protection from loss of innocent purchasers and encumbrancers who have changed their position to their detriment without notice, actual or constructive, of prior liens or conveyances. I am convinced that in a case of this nature where no one has been injured by the mistake but the party complainant and no one has changed his position by reason of the act which has been performed in consequence of the mistake, relief cannot be properly denied upon the theory that a high degree of vigilance has not been exercised by complainant. The negligence of complainant in failing to procure proper searches should, I think, be thus considered with reference to its effects on the rights of others, and so considered cannot be properly re-

garded as that type of culpable negligence which appropriately affords a bar to equitable relief. In addition to the cases already cited, the following cases, all essentially the same as the present case, do not regard the neglect of complainant to procure searches as operative to bar the relief of restoration of the canceled lien as against an intermediate encumbrancer. *Pearce* v. *Buell, 22 Oreg. 29, 33; Wooster* v. *Cavendar, 54 Ark. 153; Piper* v. *Headlee, 39 Ill. App. 93; Sledge* v. *Obenchain, 58 Miss. 670, 675; Geib* v. *Reynolds, 35 Minn. 331; Walters* v. *Walters, 73 Ind. 425; Cansler* v. *Saills, 54 Miss. 446.*

It is urged in behalf of the judgment creditors that it was the custom of complainant association to neglect the procurement of searches from the office of the clerk of the supreme court. The evidence at the hearing disclosed that fact. Searches were made by the conveyancer who superintended the transaction in the office of the county clerk, but not elsewhere. It was explained that the reason for this arose from the fact that the community was a small one and the affairs of borrowers were, as a rule, well known, and searches in the supreme court were often dispensed with for that reason. In this case the conveyancer believed that his knowledge of the affairs of the mortgagor justified his conclusion that no judgments in the supreme court existed. I find nothing in this aspect of the case to modify the views already expressed. It was the belief that no intermediate liens in fact existed that induced the whole transaction. Some of the cases above cited from other jurisdictions are identical with this case in that respect.

Some testimony was introduced at the hearing to the effect that one of the directors of the association was informed of the existence of one of the judgments here in question. He denied that claim. I do not think the evidence justifies a finding that the director was made acquainted with that fact. He knew of the debt, and I am unable to doubt his statement to the effect that he understood the statements to him to refer to the debt and not to a judgment. This dispenses with any consideration of how far his knowledge would have been binding upon the association.

I will advise a decree in accordance with the prayer of the bill.