The defendant Newman moves to strike the bill of complaint on the ground that it discloses no cause of action against him. This is the case made by the bill:
Collins and wife applied in writing to complainant for a loan and agreed to furnish as security a first lien on their home in Bayonne. The application stated that the encumbrances on the property, besides taxes, were a first mortgage of $5,000, a second mortgage of $2,025.88, both held by Stillwell; and a third mortgage of $1,000 held by Newman. The application was approved by complainant in the sum of $6,200. Before closing the loan, complainant had the title examined by a lawyer and received his report that the liens were as stated in the application. The transaction was closed *Page 267 
by another member of the bar designated by complainant as its attorney. Collins and wife executed and delivered to complainant a promissory note and mortgage for $6,200. Complainant paid to the city of Bayonne $1,876 in satisfaction of municipal liens and delivered to Stillwell its bonds amounting, with accrued interest, to $4,240 in settlement of his first mortgage. This mortgage, endorsed for cancellation, he surrendered to complainant. His second mortgage was also surrendered and replaced by a new mortgage in the sum of $1,093.
Through inadvertence, complainant's instructions to its attorney who closed the loan, failed to notify him of the existence of Newman's mortgage. The borrowers did not inform him of it but, on the contrary, made affidavit at the time of closing that there were no mortgages open against the premises except the two held by Stillwell. Complainant's disbursements in bonds and cash were made at the instance and request of Collins and were made on the understanding and agreement, and with the intention that complainant's mortgage would be a first lien upon the premises. Two days later, the Stillwell mortgages were canceled of record at the request of an agent of complainant who was ignorant of the existence of Newman's mortgage.
Complainant's mortgage, by reason of defaults, has fallen due. Complainant prays that it be subrogated to the liens of the city of Bayonne and of Stillwell and that these liens be revived for the benefit of complainant and be declared prior to Newman's mortgage and that the premises be sold to raise the amount due complainant.
It is commonly said that subrogation is either legal or conventional; that legal subrogation exists only in favor of one who, to protect his own rights, pays the debt of another; that conventional subrogation arises only upon agreement between the lender and the debtor or old creditor, that the lender shall be subrogated to the old lien; that otherwise, the one who advances money to pay a debt cannot be subrogated to the rights of the old creditor. Seeley v. Bacon, 34 Atl. Rep. 139; Gore v. Brian,35 Atl. Rep. 897. Generally, when the *Page 268 
person advancing the money to pay the old debt, takes a new mortgage and the old lien is canceled, there is no subrogation, because the acceptance of the new security evidences an agreement and intention by the new creditor to rely thereon rather than on the old, and because, upon the cancellation of the old lien, nothing remains to be the object of subrogation. Vaux v. Vaux,115 N.J. Eq. 586.
But where, through fraud or mistake, the new security turns out to be defective, there frequently arises a third kind of subrogation. It does not depend upon the subrogee having been a surety or having had an interest in the property to protect and it does not depend upon an agreement that he would be subrogated to the rights of the old creditor. It grows rather from an agreement or understanding that he would obtain a security of a particular kind and from his failure, through fraud or mistake, to obtain such security. Our reports furnish several examples of this sort of subrogation. Barnett v. Griffith, 27 N.J. Eq. 201,
where one of the mortgagors was an infant. Tradesmen'sBuilding, c., Assn. v. Thompson, 32 N.J. Eq. 133, where the person who canceled the second mortgage was not authorized to do so. Seeley v. Bacon, supra, money advanced in ignorance of mortgage lien, although a proper search would have disclosed it.Gore v. Brian, supra, lender relied on debtor's assurance that a second mortgage, open of record, had been paid. SerialBuilding Loan and Savings Assn. v. Ehrhardt, 95 N.J. Eq. 607,
the woman who executed the new mortgage to bar dower, was not actually the wife of the mortgagor. In Jackson Trust Co. v.Gilkinson, 105 N.J. Eq. 116, mechanics' liens intervened; inspection of the premises at the time of the execution of the new mortgage would have shown a building in course of erection. In all these cases, subrogation was granted on the ground that a state of facts fraudulently concealed from the lender, or of which he was ignorant, impaired the lien of the new mortgage. Cases of this kind in other jurisdictions are analyzed in 5L.R.A. (N.S.) 838; 46 Id. 1049; 50 Id. 489; 43 A.L.R. 1393, and 70 A.L.R. 1396.
Defendant calls attention to the application for the loan, *Page 269 
and to the title search, both revealing that Newman held a mortgage for $1,000. "That the knowledge of the proper corporate agent must be regarded as in legal effect the knowledge of the corporation," Allen v. City of Millville, 87 N.J. Law 356.
From this, defendant deduces that complainant acted with knowledge of Newman's mortgage; that there was no mistake or fraud, and hence no ground for subrogation. Obviously there was, however, a mistake, due to the carelessness of some employe of complainant, else the settlement attorney would have been notified of the mortgage. There was also mistake or fraud on the part of the borrowers or they would not have made affidavit that the only liens were the taxes and the Stillwell mortgages.
In considering what effect should be given to the negligence of complainant, the surrounding circumstances should be considered. Complainant corporation was created by act of congress to meet a national emergency; its operations were on a gigantic scale; its agencies numerous and scattered; its attention centered on granting to home owners the maximum of relief in the minimum of time. Necessarily, its personnel was hurriedly gathered. The man who must act quickly in an emergency is not required or expected to proceed with the same care as if the situation were quiet and unhurried. So with complainant. The failure of complainant to notify the settlement attorney of the existence of Newman's mortgage is not surprising but is a normal result of the tremendous volume of business which complainant was transacting through its hastily formed organization.
In both Seeley v. Bacon, supra, and Jackson Trust Co. v.Gilkinson, supra, the lender's predicament was due to the carelessness of himself or his agent, yet he was not denied relief. Vice-Chancellor Leaming in Institute Building and LoanAssociation v. Edwards, 81 N.J. Eq. 359, 365, said: "That even a clearly established negligence may not, of itself, be a sufficient ground for refusing relief if it appears that the other party has not been prejudiced thereby. * * * Where the act done by mistake is one calculated to induce others to take a line of conduct which will put them to loss *Page 270 
if the mistake is corrected, it ought to be clear that the party asking for relief has been led into the mistake in spite of the employment of the highest degree of vigilance. Where, however, no one is injured by the mistake but the party himself, and no one has changed his position by reason of the act executed through the influence of the alleged mistake, I see no reason why the mistake should not be corrected, although the highest degree of vigilance has not been exercised."
Newman has not been prejudiced in any respect by complainant's mistake. Indeed, he is benefited, since Stillwell accepted, in satisfaction of his first mortgage, less than the full amount due thereon. Complainant is entitled to subrogation. The motion will be denied.