On March 1st, 1929, complainant (hereinafter called "Cliffside"), holder of a $60,000 mortgage made in 1928 by Plaza Theatre Co. of New Jersey, (hereinafter called "Plaza"), filed bill to foreclose; and on April 2d 1929, it also filed bill in insolvency as general creditor of Plaza, resulting in decree of insolvency on that same date and order appointing one Preston as receiver.
The mortgage covered theatre premises at Palisades Park, N.J., known as Park Lane Theatre; and was a second mortgage, subordinate to a first mortgage of $150,000.
Final decree for some $72,000 was entered in the foreclosure suit June 21st, 1929, and sale was advertised for July 31st, 1929.
Meanwhile Franklyn Backer, general manager of Plaza, and other stockholders of Plaza, induced Peter Adams and Adam Adams to come to their aid financially and join in a reorganization so as to satisfy Plaza's creditors and preserve Plaza's property.
Accordingly the Adams put some $35,000 to $40,000 into the reorganization of Plaza; and, pursuant to an agreement *Page 111 
made July 25th, 1929, between the Adams and Cliffside, the receivership was terminated, and on August 9th, 1929, Plaza's property was reconveyed to Plaza and by Plaza conveyed to the A.B. and B. Co., a new corporation formed by the Adams, Backer, and other old Plaza stockholders; Cliffside simultaneously loaned to the new A.B. B. Co. $60,000 secured by a new bond and mortgage made by the new company, and the A.B. B. Co. paid to Cliffside the full amount (some $72,000) due on its decree in foreclosure of the former mortgage. On October 5th, 1929, Cliffside filed warrant for satisfaction of that decree.
On February 25th, 1929, three days before the commencement of the foreclosure suit and about a month prior to the receivership proceedings and decree, Metro Goldwyn Mayer Distributing Co., (hereinafter called "Metro"), had commenced suit in the Bergen circuit court against Plaza; and entered judgment by default in that suit on April 29th, 1929, for some $700. (There is a dispute, which will be considered later herein, as to whether or not this judgment was a valid judgment against Plaza.) On April 17th, 1930, execution levy under this judgment was made on the mortgaged premises in question; and on July 9th, 1930, sheriff's sale was made to Metro for the premises, for $50, and on July 15th, 1930, sheriff's deed was made to Metro, recorded July 25th, 1930. By deed dated July 24th, 1930, recorded July 28th, 1930, Metro in turn conveyed the premises to one Tate for an actual purchase price of $800; and by deed dated February 7th, 1931, Tate subsequently conveyed the premises to Greater Newark Holding Co. for $5,100.
Default occurring under the new $60,000 mortgage made by the A.B. B. Co. to Cliffside, the latter filed the present bill to foreclose the same; and prays also that either the original 1928 mortgage or the foreclosure decree thereon be revived, and that Cliffside be decreed to be subrogated to the lien of the original mortgage and decree, — on the ground that it, Cliffside, advanced and used the entire proceeds of the 1929 mortgage to pay off the 1928 mortgage and the decree thereon and canceled the said decree in ignorance of *Page 112 
the existence of the Metro judgment against Plaza and of the rights or claim of the persons subsequently claiming under that judgment, and that in equity complainant is entitled to have its present mortgage established as a lien ahead of any title or claim of or by the Greater Newark Holding Co. (as present subsequent grantee under the execution sale on the Metro judgment).
The Greater Newark Holding Co. contests the claim of complainant and claims to have title to the mortgaged premises free from any lien of the 1929 mortgage and superior in equity to any right or claim of complainant by reason of the 1929 mortgage; and by counter-claim sues to fix and quiet its title in the premises in question.
A number of other persons are involved as parties in this suit and pleadings were filed by some of them; but at the hearing all claims were abandoned by all of the parties other than the complainant Cliffside and the defendant Greater Newark Holding Co.
Equity of course has jurisdiction, in a proper case, to grant relief against the consequences of accident or mistake; and it is to this branch of equitable jurisdiction that complainant's bill is addressed.
In Institute B. L. Association v. Edwards, 81 N.J. Eq. 359,86 Atl. Rep. 962, the dictum of Vice-Chancellor Van Fleet in Hutchinson v. Swartsweller, 31 N.J. Eq. 205, is adopted as the statement of the general rule, — to wit, — "Where a first mortgagee accepts a new mortgage and surrenders a prior one for cancellation, in ignorance of the existence of an intervening lien, equity in the absence of laches or other disqualifying fact, will restore him to his original position" (obviously as against the intervening lienor); and it was held that the complainant, which had held a mortgage ahead of the liens of the defendant judgment creditors, and had canceled it in exchange for a new mortgage of lesser amount, in ignorance of the existence of the intervening judgments, — and therefore as the result of a mistake of fact, i.e., the mistaken belief that in fact no intervening judgments existed, — was, notwithstanding its ignorance *Page 113 
of the judgments was the result of negligence in failing to search the records, entitled to be restored to its original position as against the judgment creditors, inasmuch as no injury or damage had been or would be caused to them, — they having in nowise changed their previous position in consequence of, or reliance upon, the cancellation of the mortgage.
Considering the instant case in the light of these principles, it is clear that there is no difference in essence or in principle between the cancellation of a mortgage and the satisfaction of a foreclosure decree into which the lien of a mortgage has become merged; that there is no difference in essence or in principle whether the replacement of the prior mortgage by the lesser new one is a transaction with the original mortgagor or with a subsequent grantee from that mortgagor; and that the present case would be entirely similar to the case just mentioned if the present claim was simply against Metro still as a judgment creditor, — unless defendant is correct in some one or more of its contentions to wit: —
1. That Cliffside was not ignorant of the Metro judgment, but on the contrary had actual knowledge thereof; and that that fact bars it from relief.
2. That Cliffside did not satisfy its decree as the result of a mistake of fact; and that hence it is not entitled to relief.
3. That Cliffside satisfied its decree as the result of gross negligence on its part; and that negligence, — or at any rate gross negligence, — is a bar to its relief.
4. That the new mortgage was not intended as, and was not, a replacement of the lien of the foreclosure decree.
Taking up these contentions out of order, — it is difficult to believe that defendant advances the last one seriously. It is sufficient to say that the proofs establish beyond any question that it was the intent and agreement of the parties that the Adams (by their new A.B. B. Co.) were to take over Plaza's property, pay to Cliffside some $12,000 of the $72,000 then due it on its decree and secured by the theatre property, and that the loan should be extended or renewed, as to the $60,000 balance, on the same security, in the form of the new *Page 114 
$60,000 mortgage for that balance, in replacement of the decree. Indeed Adams (the real defendant) himself testifies to this effect.
As to the other three contentions, — let us consider the facts shown by the evidence.
 * * * * * * *
To sum up the facts established by the evidence, — so far as they are relevant and material to the point presently being discussed, — there was never any actual knowledge by Cliffside or any of its officers or agents, prior to the satisfaction of the decree, of the existence of a judgment lien on Plaza's real estate. No information as to the existence of "a judgment" in favor of Metro came to Cliffside itself, nor to Preston or Weitz as officers or agents of Cliffside. Such information did come to Preston in his capacity as receiver of Plaza, but he was also told by Plaza's general manager and the purchasers of Plaza's property that there was some mistake and that it would be straightened out and taken care of. The satisfaction of the decree was done by Weitz, the solicitor for Cliffside in the foreclosure suit. Neither Cliffside itself, nor Preston its officers, directed or specifically authorized Weitz to satisfy the decree. Preston, as Cliffside's officer and agent, directed Weitz to "close the foreclosure case"; when he did this he forgot the information about the Metro judgment which had come to him as Plaza's receiver and therefore failed to inform Weitz thereof. If Weitz ever had any notice or information about the Metro judgment, he forgot it when he satisfied the decree. No search for intervening liens was made by Cliffside's officers or agents before the decree was satisfied.
Considering these facts, — it is evident that if the notice as to the Metro judgment which came to Preston as receiver of Plaza is not legally chargeable to Cliffside, then this case is similar to the Institute case, — the satisfaction of the decree, (if in fact intentionally done by Cliffside) was done because of a mistake of fact, i.e., the mistaken belief that no intervening judgment existed.
If however the notice to Preston is legally chargeable to Cliffside, then *Page 115 
(A) if Weitz satisfied the decree, without instruction or authority from Cliffside, it was (as to Cliffside) an accident, and Cliffside is obviously entitled to the relief.
(B) if Preston's instruction to Weitz be deemed to constitute a direction to satisfy the decree, then the decree was satisfied because of Preston's forgetfulness.
(C) if Weitz be deemed to have had authority but no direction, to satisfy the decree, then
(a) if Weitz had no knowledge of the judgment, the satisfaction of the decree was the result of mistaken belief that no intervening lien existed.
(b) if Weitz did ever have knowledge or notice of the judgment, he forgot it, when he satisfied the decree.
Hence the satisfaction of the decree was either an accident; or was the result of mistake of fact by an agent of Cliffside; or was the result of forgetfulness by an agent of Cliffside. If it was mistake of fact, then complainant is entitled to relief under the authority of the Institute case. If it was an accident, complainant is even more clearly entitled to relief. Cf. Harris
v. Cook, 28 N.J. Eq. 345.
Let us assume, however, that the satisfaction was the result of forgetfulness by Preston, or by Weitz, or both. It is contended by defendant that complainant is not entitled to relief because complainant was not ignorant of the judgment, and hence the satisfaction of the decree was not the result of a mistake of fact, nor of accident. It is true that in the Institute case,supra, the court found that the complainant was ignorant of the intervening lien; and that the action of the court in awarding relief was based on the finding that complainant mistakenly believed that no intervening judgments or liens in fact existed, and that that belief was a mistake of fact; and that the opinion says, (p. 364), "The equitable relief sought is therefore dependent on the existence of a mistake of fact." From the context however it is evident that the court simply meant, by that statement, "The equitable relief sought in the instantcase is therefore dependent on the existence of a mistake of fact." Vice-Chancellor Leaming certainly did not mean to say that such relief could *Page 116 
only be granted where it was based on a mistake of fact, — for that would exclude relief where the basis was accident rather than mistake. The Garwood case, supra, had in effect decided, in circumstances similar to those in the Institute case, that the mistaken belief as to non-existence of intervening liens, was a mistake of fact; and by the quoted language in the Institute
case the court was simply making a re-statement or reiteration to the same effect. In any event, the Institute case neither decides nor states that relief cannot be awarded where the inadvertent action is the result of forgetfulness rather than a mistaken belief.
It is clear upon consideration that a situation such as that presented in the instant case, arising out of the satisfaction, cancellation, discharge or release of a mortgage or other lien, due to some inadvertence, may be the result of any one of a number of different causes. Such a cancellation may be due to mistake of law, mistake of fact, ignorance of law, ignorance of fact, accident or forgetfulness, — (we are of course not concerned here with any appeal to equitable relief based on fraud, concealment, misrepresentation or negligence on the part of the party against whom the relief is sought). As to all of these, technical distinctions exist, whereby each differs from the others. On the other hand, each has some similarity to the others; all are what may be called inadvertences; all fall within the broad general category of accident and mistake. What, if any, is the test or standard by which these classes, — strictly as such and without reference to any other outside factor, such as negligence, — may with reason be divided into two divisions, with respect to one of which one may properly say, "In these cases equity will grant relief," — and as to the other "In these cases relief will not be granted?" It is certainly not true that fault or negligence is inherent in all cases in any of these classes, nor that it is absent in all cases in any one of them. Even in a case of accident, that accident may have been due in whole or in part to negligence; and on the other hand a mistake of law may occur utterly without fault, — as where a principle of law is subsequently overruled. The difficulty, if not indeed the absolute impossibility *Page 117 
of making any logical and rational differentiation in this behalf is evident on any consideration of, or attempt to reconcile, the varying adjudications even in the same jurisdiction.
In this state, as well as others, the law has undergone a very considerable development since the early adjudicated cases. The constant trend is toward a greater liberality in the granting of relief in cases where no hardship is thereby imposed on defendant and where the denial of relief would result in both great hardship to complainant and unjust enrichment of defendant. An excellent and illuminating opinion in this behalf is that of Vice-Chancellor Reed in Swedesboro Loan Building Ass'n v.Gans, 65 N.J. Eq. 132, 55 Atl. Rep. 82, in which relief was granted though the mistake was really a mistake of law (which was likewise the case in Coudert v. Coudert, 43 N.J. Eq. 407,5 Atl. Rep. 722). See also the views expressed by the appellate court in Freichnecht v. Meyer, 39 N.J. Eq. 551.
However, the instant case, as has been shown, is not one of mistake of law. It is one of mistake of fact, or of accident, or of forgetfulness.
That complainant would not be barred from relief where his plight is the result of accident, or of mistake of fact, — without more, — is well settled. Why should he be barred where it is the result of forgetfulness? What differentiation is there between these things which can justify a differentiation as to the granting of relief? None is discernible.
A mistake of fact, a mistaken belief, is a state of mind. Forgetfulness is equally a state of mind, (although a different state of mind). It is not perceived that there would be any greater difficulty as to the susceptibility of proof or disproof, — (a test which has been suggested in some courts), — in the one case than the other. The burden is on complainant, in all instances, to furnish proof satisfactory to the mind of the court. Forgetfulness also is an accident, — especially where the forgetfulness is that of an agent. Even where the forgetfulness is that of the party himself, it certainly may be and usually is, as much beyond the control of, and without any *Page 118 
negligence on the part of, the party as the act of a third party, — (unless it is to be held that forgetfulness is negligence perse). There is no more reason in the one instance than the other for denying relief on any theory of fault, — dimly akin to the doctrine of "unclean hands." As a matter of fact, the conduct of a party who errs because of forgetfulness seems clearly much farther removed from any "reprehensibility" than that of one who, as in the Institute case, fails to make a search, — because the latter would know that he was taking some risk, however infinitesimal he might believe it to be.
Neither can there be perceived any reason for making such a differentiation from the standpoint of public policy, — another test which has been suggested in some of the adjudicated cases. If relief is to be given — as it is given, — in cases where the inadvertent act which accomplishes the unintended damaging result is a mistake of fact accompanied by some negligence, no ground of public policy can be conceived for denying relief where the inadvertent act is the result of forgetfulness.
Forgetfulness, or ignorance, of a fact is just as much a mistake of fact as is an erroneous active belief, — and is equally ground for relief. 2 Pom. Eq. Jur. (4th ed.) § 854.
Returning to a consideration of the first three of defendant's four contentions earlier mentioned herein, —
1. The first is untrue in fact and unsound in law. The proofs show not only that Cliffside itself (its board of directors) had no knowledge of the Metro judgment; they show that not even Preston (or any other of Cliffside's officers or agents) had anyactual knowledge of Metro's judgment. At most, he had hadnotice, — information sufficient to put him on inquiry which would have resulted in knowledge. But he, — and Cliffside itself, — had similar notice, — constructive notice, — from the record of the judgment. That such constructive notice is not a bar to relief is established by Institute B. L. Ass'n v. Edwards,supra, and again more recently by Home Owners' Loan Corp. v.Collins, 120 N.J. Eq. 266, 184 Atl. Rep. 621, and Chichi Lombardo Bldg. Co. v. Herrman, *Page 119 121 N.J. Eq. 252, 189 Atl. Rep. 625. The Home Owners Loan Co.
case further determines that not even actual knowledge by complainant's agent is a bar to relief, — for in that case complainant's agents had searched the records and found the record of the intervening lien.
2. The second contention is either untrue in fact or unsound in law. The decree was satisfied either as the result of a mistake of fact or of forgetfulness. If the latter be true, it is no bar to relief, — both for the reasons heretofore given, and also on the authority of the Home Owners Loan Co. case, supra. The "mistake" in the latter case either was, or at least may well have been, forgetfulness.
3. Finally, the third contention is either untrue in fact or unsound in law. Failure to search the title is negligence, but it is not such gross negligence as to bar relief, — (if gross negligence, without more, will ever bar relief). Institute B. L. Ass'n v. Edwards, supra. Forgetfulness may doubtless also be said to be negligence or to involve negligence, but as heretofore stated, it would seem clearly a lesser degree of negligence than failure to search the title. Neither one involves as great a degree of negligence as may have existed in the HomeOwners Loan Co. case, supra.
A rule that denied relief to a complainant who has been guilty of any negligence would not be without a logical basis; but as we have seen, such a rule is not the law in this state, — (nor is it the law generally). That being so, why should even gross negligence by complainant, — without more, — be a bar to relief? What logical basis can there be for attempting to differentiate the rule as between cases of negligence and cases of gross negligence. If relief is to be denied on the theory of complainant's not being entitled to relief when he has been guilty of negligence, then any negligence should bar. If such is not the theory, then why should even gross negligence bar? And how and where can such a line be drawn? It is stated by Professor Pomeroy, — 2 Pom. Eq. Jur. (4th ed.) 1749, — as the "conclusion from the best authorities" that the negligence which will bar relief "must amount to the violation of a positive legal duty." *Page 120 
Obviously if defendant, (being without fault) has changed his position as the result of complainant's negligence, that would be ground for raising some estoppel; but that would be true whether the negligence was gross or slight, — and indeed it would seem that it would also be true even if there had been nothing negligent on the part of complainant.
In any event it seems well settled that in this state such negligence as existed in the present case, — whether forgetfulness or failure to search the title, — is not a bar to relief. Institute B. L. Ass'n v. Edwards, supra; Vliet v.Cowenhoven, 83 N.J. Eq. 234, 90 Atl. Rep. 681; Jackson TrustCo. v. Gilkinson, 105 N.J. Eq. 116, 146 Atl. Rep. 658; HomeOwners' Loan Co. v. Collins, supra; Chichi Lombardo Bldg.Co. v. Herrman, supra. The foregoing determinations are all in this court, but in Sapinsky v. Stout, 101 N.J. Eq. 813,138 Atl. Rep. 899, the court of errors and appeals sanctions the same principle. In that case judgment by default had been entered against complainant in a suit at law, and property of complainant worth $22,000 had been sold and conveyed to defendant (the judgment creditor) for $168 at execution sale on that judgment, — all because of the negligence of complainant's attorney. The determination of the court was, (in effect), that complainant, upon paying to the defendant the full amount of its judgment and expenses, was entitled to decree that defendant convey the property back to complainant, notwithstanding the gross negligence of complainant's attorney. Obviously the only equitable ground for this relief was the same principle of relief against undue hardship to complainant and unjust enrichment of defendant which is relied on in the present case, for defendant had been guilty of no legal wrong nor inequitable conduct and defendant's legal title was unassailable and this court of course had no power to set aside or control the proceedings at law; it could only give relief in personam, on equitable grounds against the result of the legal proceedings.
It may not be unworthy of observation that in most, if not all, of these cases in which this relief has been granted notwithstanding negligence on the part of the complainant, the negligence has actually been not by complainant but by *Page 121 
an agent of complainant. That there is a very real and substantial difference between these two situations is obvious on reflection. In the latter case the situation is essentially that of accident so far as complainant is concerned; the complainant himself has been guilty of no negligence or fault (unless he has negligently selected his agent) and hence there is no basis for denying him relief on any idea that a complainant whose difficulty has been caused by his own negligence is not entitled to aid or relief therefrom by this or any other court. It may be that this has in fact been, — perhaps unconsciously, for it seems never to have been so expressed, — the basis for the refusal to hold that the negligence is a sufficient ground for denying the relief.
If so, the same situation exists in the instant case, — for such negligence as existed was the negligence of complainant's agents, Preston or Weitz or both. There was no negligence by the complainant corporation itself; and still more there was no negligence on the part of the real parties in interest, — the stockholders of complainant. It is upon them that this great loss would fall, and they are wholly innocent not only of any inequitable conduct but of any negligence. In such a case it may well be held that mere negligence by complainant's agent, no matter how gross that negligence may have been, will not, without more, constitute a bar to relief.
It is concluded therefore that complainant is entitled to relief as against Metro as judgment creditor. The granting of such relief results in no damage or inequity to Metro, — it simply restores the situation to what it was before Cliffside's inadvertent satisfaction of the decree. Metro never took any action, either in recovering its judgment or in levying its execution, in reliance upon any belief that Cliffside's decree was satisfied. At the time of the recovery of the judgment the decree had not been satisfied; and at the time of the levy of execution Metro believed that Cliffside's mortgage or decree was still outstanding as a prior lien.
A judgment creditor is not, merely as such, a purchaser for value without notice. Herbert v. Mechanics B. L. Ass'n,17 N.J. Eq. 497. Even by execution levy his interest simply attaches to his debtor's property as it exists at that time, subject *Page 122 
to all equities against the debtor's interest therein. Harney
v. First Nat'l Bank, 52 N.J. Eq. 697, at 707-8,29 Atl. Rep. 221. Complainant's equitable right being one not susceptible of being recorded, was not by operation of the recording statutes barred in favor of, nor subordinated to, the right which Metro acquired by its levy. Harney v. First Nat'l Bank, supra.
The position of Metro was in nowise bettered when it became purchaser at its own execution sale. In doing so it did not act in, or because of, any belief that it was buying free from Cliffside's $60,000 mortgage. It believed it was buying an equity of redemption subject to that mortgage, — as appears by the testimony of its own attorney. Hence the restoration of the lien of Cliffside's mortgage or decree would occasion no damage or inequity to Metro.
Even if it should be said that by its purchase at its execution sale Metro thereby became a purchaser for value of the mortgagor's interest, — (it paid only $50, and that only out of its judgment for $700), — nevertheless it was not a purchaser without notice of Cliffside's prior interest. At the time its general lien was obtained by entry of judgment on April 29th, 1929, Cliffside's original mortgage of $60,000 was of record, andlis pendens had been filed as to the foreclosure suit. Of these Metro not only had constructive notice, but the proofs show that it also had actual notice in July, 1929, and as well actual notice that foreclosure sale was to take place July 31st, 1929. It had the same and no other knowledge when it levied execution on April 17th, 1930, and when it bought at execution sale on July 9th, 1930, — as appears by the testimony of its own attorney who acted as its agent in that purchase. The purchase was made with the information and in the belief that Cliffside's original mortgage lien for upwards of $60,000 was still outstanding and unpaid and superior to any title which Metro would acquire. Although the deed to the A.B. B. Co. and the new $60,000 mortgage back to Cliffside had been made on August 9th, 1929, and the decree in foreclosure of the original Cliffside $60,000 mortgage had been satisfied, Metro had no knowledge or information thereof at the time it bought. *Page 123 
Metro was therefore not a purchaser without notice; it was a purchaser with the knowledge, information and belief that Cliffside had a right and interest, legal and equitable, of upwards of $60,000 in the property ahead of any right or interest that it would acquire by its purchase. That, in substance and equity, is precisely the same equitable right and interest which Cliffside now claims, — in fact its present claim for its $60,000 mortgage is considerably less than its right under its $72,000 decree.
It is true that if Metro had examined the records at the time it purchased it would have found that Cliffside's decree had been satisfied; but it is not perceived that this constitutes Metro a purchaser without notice. The purpose and application of the principle of constructive knowledge is for the protection of a prior equity against extinguishment, not to aid a subsequent purchaser in extinguishing a prior superior equity. It is not known that it has ever been applied or construed to relieve a party from the effect of actual knowledge of a superior equity and of information and belief that it continues to exist, — and which in fact does continue to exist, — by reason of the fact that if he had examined the records he would have been justified in believing that it did not continue to exist and in acting upon that belief; nor is it perceived how in equitable contemplation such an application or construction could be given to it.
Moreover if Metro had examined the records, it would have found in addition to the satisfaction of Cliffside's decree, the prior deed to the A.B. B. Co. and the new mortgage to Cliffside, and if it had had this knowledge and information, those very facts, in conjunction with its actual knowledge of the other facts above mentioned, were certainly such as to lead any ordinary mind to the conclusion that very likely those things had happened which actually had happened, — namely that Cliffside had taken a new mortgage in place of its old mortgage and satisfied its decree under the latter in ignorance of Metro's judgment and execution levy, — and hence were such as to put Metro on inquiry whereby it would have acquired that actual knowledge. *Page 124 
Metro was not a purchaser without notice; Cliffside's equity was not extinguished by that purchase.
Neither was it extinguished by the purchase from Metro by Tate. Although Tate paid Metro $800 for the conveyance to him of Metro's right, title and interest in the property, he was not a purchaser without notice of Cliffside's equitable interest. The proofs leave no doubt that Tate had actual and full knowledge of that interest.
 * * * * * * *
Especially does he admit that he knew or believed that that which he purchased was subject to Cliffside's mortgage (as well as the prior first mortgage), — and he was so told by Metro's attorney, — so that he was precisely in the same situation as to knowledge that Metro was at the time of its purchase. He bought solely on Backer's urging, and in the expectation and belief, not that he would get a title free of Cliffside's mortgage but that he would get a title or interest ahead of the A.B. B. Company's title or which the Adamses would feel forced to buy to protect themselves.
Concededly the Greater Newark Holding Company is the agent or representative of the Adamses, and concededly it was therefore not a purchaser without notice at the time of the purchase by the Adamses in their names; and inasmuch as neither Metro nor Tate were such, Cliffside's equity is not extinguished as against this contesting defendant.
As has already been indicated with regard to Metro, there is neither evidence nor claim that Greater Newark Co. has done anything to change its position, subsequent to its purchase, in reliance upon any belief that Cliffside's prior equity had been eliminated, — no evidence or claim of anything to raise an estoppel against the enforcement of Cliffside's equity.
Cliffside's mortgage is therefore in equity superior to whatever right, title or interest Greater Newark Holding Co. has in the mortgaged premises, and Cliffside is entitled accordingly to foreclosure decree against the latter as well as the other defendants, — provided only that such decree shall be for an amount no greater than the amount due on its former decree.
 * * * * * * * *Page 125