In re Frank H. BRIDGE, d/b/a F.H. Bridge & Associates, Debtor.

**MIDLANTIC NATIONAL BANK, Appellant,**

v.

**Frank H. BRIDGE, d/b/a F.H. Bridge & Associates; James J. Desmond, Jr.; Joseph P. Iarussi; Andrew J. Wilson; Laird and Wilson; Trident Abstract Company; American Title Insurance Company; Barry W. Frost, Trustee.**

No. 93–5014.

United States Court of Appeals, Third Circuit.

Argued July 2, 1993.

Decided March 1, 1994.

Kevin D. Sheehan (Argued), William R. Serber, Serber, Konschak & Jaquett, Ocean City, NJ, Anne M.P. Kelley, Horn, Goldberg, Gorny, Daniels, Paarz, Plackter & Weiss, Voorhees, NJ, Attorneys for Appellant Midlantic National Bank.

Douglas M. Calhoun, Calhoun & Associates, Spring Lake Heights, NJ, Attorney for Appellees James J. Desmond, Jr. and Joseph P. Iarussi.

Carol L. Knowlton (Argued), Barry W. Frost, Teich, Groh and Frost, Trenton, New Jersey, Attorneys for Appellee Barry W. Frost.

Before: BECKER, ALITO, and ROTH, Circuit Judges.

**OPINION OF THE COURT**

BECKER, Circuit Judge.

This is an appeal from an order of the district court affirming an order of the bankruptcy court. Both courts rejected the claim of appellant Midlantic National Bank ("Midlantic") that, notwithstanding Midlantic's failure to record a refinanced real estate mortgage prior to the bankruptcy of the mortgagor, it must prevail over the bankruptcy trustee because Midlantic's unrecorded mortgage stands in the shoes of its prior recorded mortgage under the doctrine of equitable subrogation. We conclude that under New Jersey law, which we find applicable to the controversy, the trustee's "strong arm" powers as a hypothetical bona fide purchaser, *see* 11 U.S.C. § 544(a)(3), entitle the trustee to avoid the equitable lien of the unrecorded mortgage, and hence we will affirm.

## I.

The underlying facts are not in dispute. On March 31, 1987, the debtor, Frank Bridge, obtained a $260,000 mortgage loan from Midlantic to finance the construction of improvements on his property at 94 South Main Street in Ocean Grove, Monmouth County, New Jersey. The mortgage was recorded on April 3, 1987, in the Monmouth County Clerk's Office. In 1988, Bridge and Midlantic agreed to refinance the loan and, on October 18, 1988, Bridge secured another mortgage on the Ocean Grove property for $260,000. Bridge used the proceeds from the note underlying this mortgage to discharge the debt from the original mortgage.

Throughout these transactions with Midlantic, Bridge was represented by counsel who also acted as the settlement agent for the October 18, 1988 transaction, and, as such, was required by Midlantic to record the new mortgage. Bridge's counsel subsequently certified that the mortgage had been sent for filing and was now the primary lien on the Ocean Grove property. Unbeknownst to Midlantic and Bridge, however, the October 18, 1988 mortgage was not recorded, although on July 13, 1990, the original mortgage was marked satisfied. Moreover, a

judgment against Bridge entered on February 8, 1990, in favor of James J. Desmond, became a lien against the property.

On August 15, 1990, Bridge filed a voluntary petition under Chapter 7 of the Bankruptcy Code in the Bankruptcy Court for the District of New Jersey. As of this time, the new mortgage was unrecorded and remained so until September 12, 1990, when Midlantic ultimately recorded it.

■ In December of 1991, Midlantic initiated an adversary proceeding in the bankruptcy court. Although it conceded that in view of the failure to record the mortgage, the New Jersey recording statute appeared to favor the trustee, *see* N.J.S.A. 46:22–1 (1989),[1] Midlantic argued that it retained an equitable lien on the Ocean Grove property, which was superior to all other interests in the property because the doctrine of equitable subrogation operated to place it in the position of its discharged first mortgage. Midlantic moved for summary judgment on this issue, which the bankruptcy court denied. Instead, the bankruptcy court granted the trustee's cross-motion for summary judgment,[2] holding that the trustee's "strong arm" powers under 11 U.S.C. § 544(a)(1)–(3) operated to avoid Midlantic's interest in the Ocean Grove property.

Midlantic appealed to the district court, which affirmed the bankruptcy court's rulings. The district court noted that, although Midlantic had argued that it should prevail over the trustee's strong-arm powers based on the doctrine of equitable subrogation, Midlantic had cited no relevant New Jersey authority. The court concluded that the power conferred upon the trustee as a bona fide purchaser under § 544(a)(3) authorizes the trustee to avoid such an equitable interest in real property. This appeal followed. We have jurisdiction under 28 U.S.C. §§ 158(d) and 1291. As the bankruptcy and district courts' holdings rested on an analysis of § 544(a) of the Bankruptcy Code, we exercise plenary review. *Sapos v. Provident Institution for Savings*, 967 F.2d 918, 922 (3d Cir.1992).

## II.

■ Title 11, section 544(a) of the Bankruptcy Code, the "strong arm" clause, defines the trustee's powers over rival creditors. It provides:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is re-corded, except as against such subsequent judgment creditors, purchasers and mortgagees.

N.J.S.A. 46:22–1 (1989). As New Jersey's recording statute is of the race-notice variety, "in order for a subsequent purchaser to have a priority she must achieve a dual status: she must not only take without notice of the prior interest, but she must also put her interest on the record before the holder of the prior interest is able to do so." 6A Richard R. Powell, *The Law of Real Property* ¶ 905[1][iii] (1993).

---

1. Title 46, section 22–1 of the New Jersey recording statute provides:

   Every deed or instrument of the nature or description set forth in section 46:16–1 of this title shall, until duly recorded or lodged for record in the office of the county recording officer in which the affected real estate or other property is situate, be void and of no effect against subsequent judgment creditors without notice, and against all bona fide purchasers and mortgagees for valuable consideration, not having notice thereof, whose deed shall have been first duly recorded or whose mortgage shall have been first duly recorded or registered; but any such deed or instrument shall be valid and operative, although not re-

2. James J. Desmond, as a creditor of the bankruptcy estate, joined the trustee in opposing Midlantic's adversary action.

turned unsatisfied at such time, whether or not such a creditor exists; or

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a)(1)–(3) (1988). In other words, as of the date of the petition's filing, § 544(a)(1) confers upon the trustee the rights of a hypothetical judgment lien creditor; § 544(a)(2) confers upon the trustee the rights of a hypothetical unsatisfied execution creditor; and § 544(a)(3) confers upon the trustee the rights of a bona fide purchaser when, as in this case, real property is at issue.

We must first decide whether state or federal law defines the trustee's avoidance powers under § 544(a). Although the trustee concedes that it is the state law that usually establishes the relevant rights of the trustee and the creditors under § 544(a), he argues that in this particular situation—when an unperfected equitable lien is at issue—federal law controls. More specifically, the trustee contends that it is a longstanding tenet of bankruptcy law that the trustee always has the power to avoid an equitable lien—a lien that could have been perfected but was not. To support this position he has cited a line of cases suggesting that the strong arm powers accorded the trustee under § 544(a) impliedly include the power of the trustee to defeat the unperfected liens. *In re G & R Builders, Inc.*, 123 B.R. 654, 660 (Bankr.M.D.Florida 1990). *See also In re Chenich*, 100 B.R. 512 (Bankr. 9th Cir.1987) (a trustee takes title to real property free from all equitable liens); *In re IDK Logging, Inc.*, 116 B.R. 788 (Bankr.E.D.Wash.1990)

(§ 544 places trustee in position of priority over equitable subrogee); *In re Penn Central Transp. Co.*, 385 F.Supp. 612 (E.D.Pa. 1974) (trustee has priority over creditor who failed to record).

The trustee also points out that the genesis of this rule lies in the Bankruptcy Act of 1898, which provided that it was "contrary to the policy" of the Bankruptcy Act to recognize an equitable lien when other ways of perfecting the lien were not utilized.[3] The trustee thus argues that because the Bankruptcy law's historic hostility to equitable liens survives to the present day and governs the case at hand, it is under this federal rather than state substantive rule that we should decide this case.

Although we recognize that historically the bankruptcy laws have been hostile to secret liens and that the case law has recognized the power of the trustee to defeat unprotected liens, we disagree that this means that federal law determines the scope of a trustee's avoidance powers. Most importantly, we note that the Bankruptcy Reform Act of 1978, Pub.L. 95–598, Title IV, § 401(a), Nov. 6, 1978, 92 Stat. 2682 (codified as amended at 11 U.S.C. §§ 101–1330 (1988)), not only eliminated § 60(a)(6), but also repealed the Bankruptcy Act of 1898. Since the current Bankruptcy Code contains no analogous provision, opinions that directly or indirectly construed § 60(a)(6) and the Bankruptcy Act of 1898 are not binding upon us. In addition, as the legislative history of the Bankruptcy Reform Act of 1978 shows, Congress intended that the strong arm provisions "should not require a transferee to perfect a transfer against an entity with respect to which applicable law[, i.e., state law,] does not permit perfection." 124 Cong.Rec. 32,400 (1978) (statement of Rep. Don Edwards of Califor-

---

3. Section 60(a)(6) of the Bankruptcy Act of 1898 provided: "The recognition of equitable liens where available means of perfecting legal liens have not been employed is declared to be contrary to the policy of this section." 11 U.S.C. § 96(a)(6) (repealed 1978). This court long ago expressed a similar aversion to equitable liens: "While an equitable lien ... may be enforceable against ... subsequent purchasers and incumbrancers with notice, it may not be enforced against prior incumbrancers or subsequent incumbrancers without notice. The trustee belongs to the latter class." *Hayes v. Gibson*, 279 F. 812, 814 (3d Cir.1922) (internal citations omitted) (according to federal bankruptcy law, the trustee's avoidance power as a lien creditor under § 47(a)(2) of the Bankruptcy Act of 1898 (the predecessor to § 544(a)(1) of the current Bankruptcy Code) was superior to the interest of an equitable lienholder in personal property).

nia, a sponsor of the proposed Code), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6456.

Similarly, the language "against whom applicable law permits such transfer to be perfected" was included in § 544(a)(3) "so as not to require a creditor to perform the impossible in order to perfect his interest." *Id.* The case law has uniformly recognized that this legislative history indicates Congress in enacting § 544(a)(3) "did not intend to transform the trustee into a 'super-priority' creditor," *In re Elin,* 20 B.R. 1012, 1018–19 (D.N.J.1982) (citing Hogan, *Bankruptcy Reform and Delayed Filing Under the U.C.C.,* 35 Ark.L.Rev. 35, 43–44 (1981)), or to grant the trustee "a substantial additional mantle of power not available to any actual [creditor or] subsequent purchaser [under state law]," *McCannon v. Marston,* 679 F.2d 13, 16–17 (3d Cir.1982).

■ It is thus clear from the legislative history of the 1978 Act and from case law that although the trustee's strong arm powers arise under federal law, the scope of these avoidance powers vis-a-vis third parties is governed entirely by the substantive law of the state in which the property in question is located as of the bankruptcy petition's filing. *See McCannon,* 679 F.2d at 14 (applying Pennsylvania law to determine whether trustee's strong arm power as a bona fide purchaser under § 544(a)(3) could avoid the unrecorded equitable interest of a purchaser in clear and open possession of the subject property); *see also* 4 Lawrence P. King, *Collier on Bankruptcy* ¶ 544.02, at 544–5, 544–14 (15th ed. 1993) (the extent of the trustee's strong arm powers is defined by the law of the situs where the subject property is located). The trustee's avoidance powers do not supplant state law; rather the trustee's powers under § 544(a) are subject to the law of the locus of the property. The incorporation of state law in this regard establishes that "[w]herever under the applicable law such a creditor or bona fide purchaser might prevail over prior transfers, liens, encumbrances or the like, the trustee will also prevail." 4 *Collier* at ¶ 544.01, 544–3.

Accordingly, we apply New Jersey law to determine: (1) whether Midlantic possesses an equitable lien on the Ocean Grove proper-

ty; and (2) if so, whether the doctrine of equitable subrogation operates to place Midlantic in the priority position as mortgagee of the first recorded (though extinguished) mortgage, and thus defeats the trustee's strong arm powers.

### III.

### A.

■ New Jersey is a "lien theory" state. It defines a mortgage as "a lien or an interest in realty" held by the mortgagee. *Garnick v. Serewitch,* 39 N.J.Super. 486, 121 A.2d 423, 428 (Ch.Div.1956); *see also J.W. Pierson Co. v. Freeman,* 113 N.J.Eq. 268, 166 A 121, 123 (1933). The legal title and all the incidents of ownership in the real property remain in the mortgagor barring default or other breach. *See City Federal Sav. and Loan Ass'n v. Jacobs,* 188 N.J.Super. 482, 457 A.2d 1211, 1213 (App.Div.1983).

■ On October 18, 1988, Bridge executed a written agreement that pledged the Ocean Grove property as security for the funds advanced to him by Midlantic in the refinancing transaction. While the resulting mortgage was unrecorded, it resulted in an equitable lien on the Ocean Grove property which could defeat the trustee's strong arm powers. As the New Jersey Chancery Court stated in *Rutherford Nat'l Bank v. H.R. Bogle & Co.:*

The whole doctrine of equitable liens or mortgages is founded upon that cardinal maxim of equity which regards as done that which has been agreed to be, and ought to have been, done. To dedicate property, or to agree to do so, to a particular purpose or debt is regarded in equity as creating an equitable lien thereon in favor of him for whom such dedication is made....

The form which an agreement shall take in order to create an equitable lien or mortgage is quite immaterial, for equity looks at the final intent and purpose rather than at the form. If an intent to give, charge or pledge property, real or personal, as security for an obligation appears, and the property or thing intended to be given, charged or pledged is sufficiently

described or identified, then the equitable lien or mortgage will follow as of course. 114 N.J.Eq. 571, 169 A. 180, 182 (Ch.1933) (internal citations omitted).

Therefore, notwithstanding its unrecorded status, the mortgage agreement between Midlantic and Bridge evidences that Midlantic retains an equitable lien on the Ocean Grove property by operation of New Jersey law. Accordingly, we now must examine whether the doctrine of equitable subrogation enables Midlantic's unrecorded equitable lien to trump the strong arm powers of the trustee.

### B.

█ Generally, when a creditor advances funds to a debtor to pay an existing debt and takes a new mortgage to secure the loan there is no subrogation because the new security manifests the creditor's intent to rely upon it, rather than upon the old security, which was discharged. *See Home Owners' Loan Corp. v. Collins,* 120 N.J.Eq. 266, 184 A. 621, 622 (Ch.1936). Sometimes, however, a creditor's new security may prove to be defective due to fraud or some kind of mistake. In such cases, the doctrine of equitable subrogation can operate to subrogate the new creditor to the position of the lender whose lien was discharged and permits the new creditor to assert its right to priority

against subsequent claimants. *Id.* 184 A. at 622.

█ New Jersey courts widely recognize the doctrine of equitable subrogation. *See Gaskill v. Wales,* 36 N.J.Eq. 527, 533 (E & A 1883); *Equity Sav. and Loan Assoc. v. Chicago Title Ins. Co.,* 190 N.J.Super. 340, 463 A.2d 398, 400 (App.Div.1983); *Kaplan v. Walker,* 164 N.J.Super. 130, 395 A.2d 897, 898 (App.Div.1978); *Gutermuth v. Ropiecki,* 159 N.J.Super. 139, 387 A.2d 385, 387 (Ch. Div.1977); *Home Owners' Loan Corp. v. Collins,* 120 N.J.Eq. 266, 184 A. 621, 622 (Ch. 1936); *Cliffside Park Title & Guar. & Trust Co. v. Progressive Theatres, Inc.,* 122 N.J.Eq. 109, 192 A. 520, 524 (Ch.1937); *Serial Bldg., Loan & Sav. Inst. v. Ehwardt,* 95 N.J.Eq. 607, 124 A. 56, 57 (Ch.1924). The rationale for the doctrine rests on the overarching tenet that "[t]he principle of subrogation is one of equity merely, and it will accordingly be applied only in the exercise of equitable discretion, and always with a due regard to the legal and equitable rights of others." *Gaskill,* 36 N.J.Eq. at 533.

New Jersey courts have implemented the doctrine in situations in which "a state of facts fraudulently concealed from the lender, or of which he was ignorant, impaired the lien of the new mortgage." *Home Owners' Loan Corp.,* 184 A. at 623.[4] In such instances, New Jersey courts have permitted an

---

4. For example, in *Gutermuth,* 387 A.2d at 385, a purchaser of real property discharged the outstanding mortgages and judgments on the subject property at closing. Unbeknownst to the purchasers, however, a lien creditor recorded its judgment shortly after the conveyance of the property to the purchasers, but before the deed and the new mortgage were recorded. The Chancery Division of the New Jersey Superior Court applied the doctrine in this situation against the judgment creditor, and subrogated the rights of the purchasers to the priority position of the discharged mortgages and judgments. Similarly, in *Home Owners' Loan Corp.,* 184 A. at 621, the chancery court applied equitable subrogation when a mortgagee assumed that it had satisfied all encumbrances on the subject property at closing (with the expectation that its new mortgage would have priority), but the negligence of the mortgagee's agent in searching the title failed to reveal an outstanding mortgage, which, as a result, was not discharged at closing. And in *Cliffside Park Title & Guar. & Trust Co.,* 192 A. at 520 the chancery court found the equities warranted application of the doctrine to

a mortgagee who, due to the negligence of its agent, accepted a new mortgage and canceled its prior mortgage without knowing about an intervening judgment lien, which the creditor executed and satisfied.

In these cases, the courts subrogated parties to the position of the discharged mortgages, and thus enabled the parties to assert priority over the intervening liens of judgment creditors and levying execution creditors. In exercising their discretion to grant such relief, New Jersey courts have placed great emphasis on the fact that the intervening creditors did not expect their interests to claim priority above all others. *See Gutermuth,* 387 A.2d at 390; *Cliffside Park Title & Guar. & Trust Co.,* 192 A. at 526; *Home Owners' Loan Corp.,* 184 A. at 623. Since the record title provided rival creditors with the notice that their interests were subject to the original mortgages (which were subsequently discharged), these courts believed it would be inequitable to permit the rival creditors to fortuitously gain priority due solely to the negligence of the subrogee or its agent.

equitable lienholder to defeat the intervening interests of lien creditors and levying execution creditors. *See supra* note 4. Since the rights of transferees of real property are at issue in this case, however, we concern our-' selves with the trustee's status as a hypothetical bona fide purchaser under § 544(a)(3) and the interrelationship of the rights of such a bona fide purchaser and an equitable lienholder under New Jersey law.

Midlantic asserts that, according to the doctrine of equitable subrogation, the interest of an equitable lienholder is superior to the trustee's interest as a bona fide purchaser. Thus, Midlantic argues, it should be subrogated to the position of its first discharged mortgage on the Ocean Grove property and escape the trustee's strong arm powers under § 544(a)(3). Midlantic offers no direct precedent for its position, but argues that *Kaplan v. Walker,* 164 N.J.Super. 130, 395 A.2d 897 (App.Div.1978), mandates this result.

In *Kaplan,* a motor vehicle was encumbered by a properly perfected lien in favor of Newton Trust Company, but the loan fell into default and the owner of the motor vehicle sought and attained a second loan from Commercial Trust Company to satisfy the original debt. The Newton Trust Company lien was discharged of record, but Commercial Trust neglected to record its lien as required by New Jersey Motor Vehicle Law. *See* N.J.S.A. 39:10–11 (1990). The owner later became insolvent and a receiver was appointed.

In an action to determine the validity of the lien, the trial court held that Commercial Trust's unperfected security interest was subordinate to the receiver's interest as a lien creditor without knowledge under § 9–301 of the New Jersey Uniform Commercial Code. *See* N.J.S.A. 12A:9–301 (1962). The Appellate Division reversed, noting that,

while § 9–301 "yields a facial result favoring the receiver in this case," the Uniform Commercial Code has not displaced the doctrine of equitable subrogation. *Kaplan,* 395 A.2d at 899. The court proceeded to apply the doctrine and held that Commercial Trust, despite its negligence, would be subrogated to the position of Newton Trust's discharged lien due to "the absence of supervening equities" and the lack of "prejudice to or justified reliance by a party in adverse interest." *Id.* at 900–01.

While acknowledging that *Kaplan* is roughly comparable to Midlantic's situation, the trustee maintains that it is distinguishable and therefore does not buttress an extension of equitable subrogation to displace the trustee's superior status as a hypothetical bona fide purchaser. The trustee also relies on *Serial Bldg., Loan & Sav. Inst. v. Ehrhardt,* 95 N.J.Eq. 607, 124 A. 56 (Ch. 1924) (and cases cited therein), as establishing a different rule. We turn first to *Serial* and then to the putative distinctions.[5]

*Serial* bears some similarity to the present case because the mortgagee discharged the first mortgage on the subject property when it executed the second mortgage. Also, the mortgagee later found the second mortgage to be defective. As a result, the mortgagee sought subrogation to the rights of the discharged first mortgage, whose validity the mortgagor acknowledged. The similarity ends there. No rival interests claimed priority to the title of the subject property since the defect in *Serial* was due to the forgery of a mortgagor's signature, rather than a recording error as in this case.

The reasoning of *Serial,* however, is instructive. The chancery court granted the mortgagee's request for subrogation (an outcome that favors Midlantic), but the court did so in part because of the absence of intervening equities of third parties standing in the

---

5. The trustee also cites *Rankin v. Coar,* 46 N.J.Eq. 566, 22 A. 177 (1890). Although the New Jersey Court of Errors and Appeals (now the New Jersey Supreme Court) held in *Rankin* that the interest of the professed equitable subrogee yielded to the rights of the bona fide purchaser of the subject property, *Rankin* is distinguishable from the instant case. The putative subrogee in *Rankin* was a life tenant whose interest

was unrecorded and who relied upon her payment of water rents and taxes to come within the doctrine. Such an encumbrancer may not secure a lien prior in position to an existing mortgage by the payment of taxes, because tax payments are made to protect either the equity of the owner or the subsequent mortgagee. *See Citizens Trust Co. of Paterson v. Paoli,* 131 N.J.Eq. 353, 25 A.2d 282 (Ch.1942).

position of bona fide purchasers for value without notice (a reasoning that favors the trustee). *Serial*, 124 A. at 57. This reasoning, which corresponds to similar language in *Kaplan*, indicates that if a bona fide purchaser had competed for priority in title to the subject property, the bona fide purchaser would have prevailed over the interest of the equitable lienholder. This is the precise outcome in the case of *Gaskill v. Wales*, 36 N.J.Eq. 527 (E & A 1883), cited by the *Serial* court, whose analysis is a controlling pronouncement of New Jersey law on this issue.

In *Gaskill*, two mortgages (the "Wilkins mortgages") originally encumbered the land in question. The landowner, Joseph Grubb, subsequently negotiated another mortgage (the "Wales mortgage"), which the parties agreed would have priority. Accordingly, the mortgagee's agent, an attorney, applied a portion of the proceeds of the Wales mortgage to discharge the Wilkins mortgages and canceled them of record. Before Grubb had obtained the Wales mortgage, he hired a number of workers to begin the construction of a dwelling-house on his property. Apparently, the workers filed mechanic's liens against Grubb's property after the Wilkins mortgages were satisfied, but before the Wales mortgage was recorded. The workers then executed on their liens and purchased the property at a sheriff's sale.

Sometime thereafter, Grubb defaulted on the Wales mortgage, and the mortgagee initiated foreclosure proceedings. Upon discovering that its mortgage was not the first in priority of record, the mortgagee claimed that it was entitled to be equitably subrogated to the rights and priority enjoyed by the Wilkins mortgages. The trial court, sitting in equity, granted the mortgagee's request for equitable subrogation largely because the money lent by the mortgagee for the Wales mortgage was used to discharge the Wilkins mortgages.

The New Jersey Court of Errors and Appeals, then New Jersey's highest Court,

unanimously reversed and offered the following reasoning:

[T]he Wilkins mortgages were canceled of record, and the purchasers under the executions had no notice of any kind of the existence of any claim to the equity. They had no notice except what the records afforded. To give the [Wales] mortgage priority over the lien-claims would therefore manifestly be highly unjust to the purchasers who bought in ignorance of any right or claim to such priority. In the absence of any other notice they, of course, had a right to rely on the condition of the records, and having done so they cannot be defeated or prejudiced by a latent equity. Their title, therefore, to the dwelling-house and curtilage is paramount to the [Wales] mortgage.

*Gaskill*, 36 N.J.Eq. at 533–34. In other words, the Court of Errors and Appeals held that the interest of the bona fide purchaser of the subject property prevailed over the unrecorded interest of the equitable lienholder; for this reason the court denied the mortgagee's request for equitable subrogation.

■ The New Jersey Supreme Court has reaffirmed *Gaskill*'s principle that "subrogation is not an absolute right, but is to be applied with due regard to the legal and equitable rights of others." *Montefusco Excavating & Contracting Co., Inc. v. County of Middlesex*, 82 N.J. 519, 414 A.2d 961, 965 (1980) (citing *Gaskill*, 36 N.J.Eq. at 533). Even in title disputes when parties have not sought equitable subrogation, the New Jersey courts have espoused *Gaskill*'s holding that a bona fide purchaser of real property for value without actual or constructive notice, takes title to the property free from unrecorded equitable liens. *See Howard v. Diolosa*, 241 N.J.Super. 222, 574 A.2d 995, 1000 (App.Div.1990) ("A purchaser or mortgagee for value without notice, actual or constructive, acquires a title or lien interest free from all latent equities existing in favor of third persons.").[6]

---

**6.** According to N.J.S.A. 46:22–1, however, the holder of an unrecorded equitable lien in real property could prevail over a bona fide purchaser if the underlying instrument creating the lien was not recordable under N.J.S.A. 46:16–1. *See,*

*e.g., In re L.D. Patella Construction Corp.*, 114 B.R. 53, 58–59 (Bankr.D.N.J.1990) (equitable lien created by listing agreement and contract of sale, which were signed before bankruptcy petition was filed, were not recordable instruments

## C.

■ Application of the principles enunciated in *Gaskill* and its progeny favors the trustee in this case. As a hypothetical bona fide purchaser, the trustee is deemed to have paid value for the Ocean Grove property and is deemed to have perfected (i.e., recorded) his interest as legal title holder in the subject property as of the date of the bankruptcy petition's filing.[7] The trustee also has the status of a hypothetical bona fide purchaser who is deemed to have searched the title of the Ocean Grove property as of the petition's filing.[8]

In the face of *Gaskill*, we find Midlantic's reliance on *Kaplan* inapposite. First, *Kaplan* concerned personal property; thus the court there examined the applicability of the doctrine of equitable subrogation within the framework of the New Jersey Uniform Commercial Code, which specifically mandates the incorporation of equitable principles, *see* N.J.S.A. 12A:1–103 (1962). In contrast, realty was the subject property in *Gaskill*, and the New Jersey Court of Errors and Appeals concerned itself with the applicability of the doctrine within the confines of New Jersey common law. In the instant case, therefore, we must apply the principles of *Gaskill* as the controlling common law precedent.

Second, although the state of the title in *Kaplan* similarly furnished the receiver, as hypothetical lien creditor, with no actual or constructive notice of the second unrecorded lien on the motor vehicle, the competing interests of the two lien creditors were in equipoise, i.e., lien creditor versus lien creditor. In *Gaskill*, however, as in the case *sub judice*, the disparity between the competing interests is clear: the mortgagee is defending his equitable lien against the bona fide purchaser's interest as legal title holder of the real property. In such a contest, the bona fide purchaser, as supervening legal title holder, prevails.

■ The trustee here took title on August 15, 1990, at the time the bankruptcy petition was filed. The first mortgage was marked satisfied on July 13, 1990; but the second mortgage was not recorded until September 12, 1990, hence when the trustee took title, there was no recorded mortgage. The short of it is that, since a bona fide purchaser acquiring title under such circumstances would have taken clear of the mortgages, the trustee must also take clear of the mortgages. We therefore conclude that, under New Jersey law, the rights of the trustee, as a hypothetical bona fide purchaser of real property for value without notice, prevail over the rights of Midlantic, as the holder of an unrecorded equitable lien, and prevent the operation of equitable subrogation in this case.

The order of the district court will be affirmed.

under N.J.S.A. 46:16–1, and thus were valid as against strong arm powers of the trustee). As Midlantic concedes that the second mortgage was a recordable instrument under N.J.S.A. 46:16–1(b), this exception is not germane to the present case.

7. Since the trustee is a *hypothetical* bona fide purchaser "that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case....," 11 U.S.C. § 544(a)(3) (1988), it would be an impractical and onerous burden to require the trustee to actually pay value for every subject property or to actually take all the steps necessary to record the interests. The foregoing language of § 544(a)(3) intimates that Congress had recognized this burden and accordingly had crafted the statute to eliminate it. Furthermore, the filing of the debtor's bankruptcy petition serves

as sufficient notice of the consequences that accompany the commencement of a bankruptcy case, such as the implementation of the trustee's avoidance powers.

8. The record title of the Ocean Grove property on August 15, 1990 (the petition's filing date), reflected the cancellation of the March 1987 mortgage on July 13, 1990; the October 1988 mortgage was not recorded. Hence, a hypothetical purchaser who had searched the title of the Ocean Grove property on the date of the petition's filing would have had no notice of Midlantic's October 1988 mortgage, and thus would have satisfied all the requirements to become a hypothetical bona fide purchaser. The trustee as hypothetical bona fide purchaser would therefore acquire the property free from Midlantic's equitable lien and remain the legal title holder.